No. 47,676
and
No. 47,824

W. B. WEAVER, *Appellant,* v. BLANCHE FRAZEE, et al., *Appellees.*

(547 P. 2d 1005)

Opinion filed March 6, 1976.

*Byron G. Larson,* of Dodge City, argued the cause, and *Larry L. Kopke,* of Great Bend, was on the briefs for the appellant.

*Jerry M. Ward,* of Ward and Berscheidt, of Great Bend, argued the cause and *Steve W. Church,* of Greensburg, was with him on the briefs for appellee, Vincent G. Fleming.

*Vincent G. Fleming,* of Larned, argued the cause, and *Dennis O. Smith,* of Hodge, Reynolds, Smith, Peirce and Forker, of Hutchinson, was with him on the briefs for appellee, Blanche Frazee.

*David L. Patton,* of Smith and Patton, of Dodge City, argued the cause and was on the brief for appellees, Roy Weaver and Valeda H. Weaver, his wife.

The opinion of the court was delivered by

Foth, C.: These are separate appeals by W. B. Weaver from orders dismissing two separate actions brought by him in the district court of Kiowa county. Since both actions arose out of the same transaction and the parties defendant overlap the appeals were consolidated for oral argument and are hereby consolidated for decision. Both cases were dismissed on the defendants' respective

motions under K. S. A. 1974 Supp. 60-212 (*b*) (6) for failure to state a claim upon which relief can be granted. The ultimate issue before us is whether either petition stated a cause of action.

The first action, filed April 18, 1974, was in the nature of a quiet title suit, aimed at setting aside a 1957 judgment against the plaintiff and the resulting execution of sale of plaintiff's real estate. The petition alleged in substance that in 1957 plaintiff W. B. Weaver owned an undivided one-fourth remainder interest in 620 acres of Kiowa county land, subject to a life estate in his mother, who died on August 6, 1972. (The other three-fourths were owned by his sister and two brothers.) The critical allegations were as follows:

". . . On May 11, 1957, Durwood B. Frazee, doing business as Frazee Grain Company at Larned, Kansas, filed an action in the District Court of Kiowa County, Kansas, being case number 4862, whereby Durwood B. Frazee petitioned the court for a judgment against this plaintiff in the amount of $1,046.04 for claimed indebtedness upon an account, when, in fact, the plaintiff was not indebted to the said Durwood B. Frazee. In the action against this plaintiff in case number 4862, Durwood B. Frazee caused the one-fourth (¼) interest of W. B. Weaver to be attached by the Sheriff of Kiowa County, Kansas, and secured service upon this defendant by publication, all as shown by the files and records herein, incorporated herein by reference. Even though the attorney for Durwood B. Frazee, Vincent G. Fleming, made an affidavit for constructive service upon W. B. Weaver, as shown by said proceedings, setting forth the then residence of W. B. Weaver in Kit Carson County, Colorado; post office address Seibert, Colorado, this plaintiff, W. B. Weaver, was never actually personally notified of the commencement or pendency of said action in case number 4862, and Durwood B. Frazee obtained judgment by default against this plaintiff on September 4, 1957, and caused said real property, belonging to this plaintiff, to be sold by the Sheriff of Kiowa County, Kansas pursuant to the order of the court on the 15th day of October, 1957, for the sum of $1,135.48 to Durwood B. Frazee, the plaintiff in said case number 4862. Thereafter the sale was confirmed by this court on the 6th day of November, 1957. Because this plaintiff, W. B. Weaver, was a resident of Kit Carson County, Colorado, and not a resident of the State of Kansas, he was unaware of the proceedings in case number 4862, and was not notified in any manner other than by notice published in The Kiowa County Signal. Because the plaintiff was not actually personally notified of the commencement and pendency of the action in case number 4862, there was a denial of due process to this plaintiff, and this plaintiff is in peril of losing his property without due process of law, and the court should relieve the plaintiff from the operation of the judgment and all other proceedings in said case number 4862."

The petition went on to allege that because plaintiff in fact did not owe anything to the Frazee Grain Company in 1957 the judgment was obtained by fraud; that on April 16, 1974, the defendant

Blanche Frazee, widow and sole heir of Durwood Frazee, had joined with the other remaindermen in a contract to sell the 620 acres for $151,280.00; and that the defendant Vincent G. Fleming was asserting an attorney's lien on Blanche Frazee's interest in the property. The prayer was for an order vacating the 1957 judgment and sale and quieting plaintiff's title to his undivided one-fourth interest.

The principal parties defendant were Blanche Frazee and any other successors in interest to Durwood Frazee, and attorney's lien claimant Vincent Fleming. Also named, for the purpose of ancillary relief, were the purchasers under the 1974 contract of sale and the bank which was serving as escrow agent under that agreement.

From that portion of the petition quoted above it may be seen that the thrust of plaintiff's cause of action is that he received no personal notice of the 1957 suit, but was served by publication only, despite the fact that the plaintiff in that suit had actual knowledge of his whereabouts as reflected in the affidavit made for publication service. The failure to give him actual notice, he claims, deprived him of his property without due process of law.

Assuming the facts pleaded to be true (*Robertson v. McCune,* 205 Kan. 696, 472 P. 2d 215), do they form a basis for declaring the 1957 default judgment and execution sale void? We must conclude that they do.

There is no allegation and no claim that the attachment and publication service did not comply with our then existing statutes, but that is far from the end of our inquiry. In 1950 the United States Supreme Court decided *Mullane v. Central Hanover Tr. Co.,* 339 U. S. 306, 94 L. Ed. 865, 70 S. Ct. 652. The bank in that case sought settlement of its accounting as a common trustee and served notice upon all beneficiaries by publication, as provided by statute. The effect of the judgment rendered was to settle all questions respecting the management of the common fund to the date of the account.

In reversing the judgment the Supreme Court noted:

". . . Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." (*Id.* at 313.)

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Id.* at 315.)

The court set out the now famous rule that:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] The notice must be of such nature· as reasonably to convey the required information. . . ." (*Id.* at 314.)

Although approving publication notice as to beneficiaries whose interests or addresses were unknown to the trustee, the Court found that:

"As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." (*Id.* at 318.)

*Mullane* was followed in 1956 by *Walker v. Hutchinson City*, 352 U. S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200, a case appealed from this court. The city had taken land by eminent domain but had given notice of the compensation proceedings solely by publication. The condemnee was allowed 30 days under the statute to appeal from the award, which he had not done. Nevertheless, the Supreme Court upheld his right to make an untimely claim, relying on *Mullane:*

". . . It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property. In *Mullane* we pointed out many of the infirmities of. such notice and emphasized the advantage of some kind of personal notice to interested parties. In the present case there seem to be no compelling or even persuasive reasons why such direct notice cannot be given. Appellant's name was known to the city and was on the official records. Even a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value." (*Id.* at 116.)

These cases (together with the similar *Schroeder v. City of New York*, 371 U. S. 208, 9 L. Ed. 2d 255, 83 S. Ct. 279) were discussed at length in *Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P. 2d 858. That case involved a tax foreclosure suit in which publication service had been obtained despite the fact that the owner lived on the land. We held that failure to serve the owner personally deprived him of his property without due process of law, and the sheriff's sale should therefore be set aside, saying:

"Where the names and addresses of adverse parties are known or easily ascertainable, notice of pending proceedings by publication service, alone, is

not sufficient to satisfy the requirements of due process under the 14th Amendment to the federal Constitution or § 2 of the Bill of Rights of the Kansas Constitution." (Syl. ¶ 6.)

*Pierce* was followed by *Chapin v. Aylward,* 204 Kan. 448, 464 P. 2d 177. In *Chapin,* unlike *Pierce,* the action to set aside the tax sale was brought after the applicable statutory time limitation for such an action (K. S. A. 79-2804b) had expired. There, as in *Pierce,* service had been obtained by publication only, even though the owners' addresses were readily available. We concluded:

"Notwithstanding the purpose and legislative intent of K. S. A. 79-2804b to bring about finality and stability to tax titles unless attacked within the twelve-months period—we hold that the provision in question must give way to a situation where the facts clearly establish a denial of due process of law. We do not mean to imply—nor has the supreme court of the United States ever declared—that constructive service by publication will never satisfy constitutional requirements of due process. Indeed, there undoubtedly are many instances where the notice provided by publication service is the only method possible. But—just as in the *Pierce* case—such was not true in the case before us." (204 Kan. at 455.)

The holding in *Chapin* on the statute of limitations question was consistent with those in *Walker* and in *Schroeder v. City of New York,* supra. In *Schroeder,* the city through eminent domain proceedings diverted river water upstream from Mrs. Schroeder's river front property. Notice of the condemnation proceedings was given by publication and by posting handbills along the river in compliance with the statute, but none was posted on Mrs. Schroeder's property. The Court held there was a denial of due process through lack of the notice which "the city was constitutionally obliged to make at least a good faith effort to give personally to the appellant—an obligation which the mailing of a single letter would have discharged." (371 U. S. at 214.) The taking occurred in 1952; the statutory limitation for claiming compensation was three years. The Court nevertheless held that Mrs. Schroeder could maintain her action for compensation, filed some eight years after the taking.

Our observation in *Chapin* that not all constructive service is bad finds its basis in the *Mullane* holding approving publication service as to unknown, contingent or unlocatable beneficiaries. (Compare, *Board of County Commissioners v. Alldritt,* 217 Kan. 331, 536 P. 2d 1377, where no address for a foreign corporation was ascertainable, with *In re Estate of Barnes,* 212 Kan. 502, 512 P. 2d 387, where the names and addresses of the decedent's heirs could have been ascertained with due diligence.) In *Mullane* the

Court also commented on other types of notice reasonably calculated to come to the attention of a property owner:

". . . It is true that publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning. The ways of an owner with *tangible* property are such that he usually arranges means to learn of any direct attack upon his *possessory* or *proprietary* rights. Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of law may reasonably be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing . . . or that he has left some caretaker under a duty to let him know that it is being jeopardized. . . . As phrased long ago by Chief Justice Marshall in *The Mary* [US], 9 Cranch 126, 144 [3 L. Ed. 678, 684], 'It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it.'" (339 U. S. at 316. Emphasis added.)

Here, of course, as a remainderman plaintiff had no possessory interest in 1957 so that even a "seizure" of the land by an "entry" onto it or by "posting" it would not have been reasonably calculated to give him notice. Since neither was done we need not determine whether either would have been a satisfactory substitute for actual notice delivered to his known address.

Defendants Fleming and Frazee, apparently recognizing the force of plaintiff's constitutional argument, urge us to hold that *Pierce* and *Chapin* had only prospective application. In support they cite *Vaughn v. Murray,* 214 Kan. 456, 521 P. 2d 262 and *Carroll v. Kittle,* 203 Kan. 841, 457 P. 2d 21, where we have refused to give retroactive effect to overruling decisions. We find we cannot take that course here. It is true that *Pierce* in 1967 specifically disapproved *Phillips Petroleum Co. v. Moore,* 179 Kan. 482, 297 P. 2d 183, which had upheld publication service in a tax foreclosure suit and the accompanying statute of limitations on an action to set aside the resulting sheriff's deed. In *Chapin,* however, we took careful note of the fact that *Phillips* was decided on May 5, 1956, only to be followed by the United States Supreme Court decision in *Walker* on December 10, 1956. It was *Walker* that effectively overruled *Phillips;* our decision in *Pierce* merely recognized the changes which had been wrought by the *Walker* decision and their effect on our case law. Neither *Pierce* nor *Chapin* announced any constitutional doctrine which had not been firmly established by

the end of 1956. *Mullane* and *Walker* were both on the books when the Frazee Grain Company took its default judgment in 1957. Under them it seems clear that due process required at least a letter to plaintiff before judgment could have been validly rendered against him.

A case bearing a striking resemblance to this one is *Groves v. Witherspoon*, (E. D. Tenn. 1974), 379 F. Supp. 52, a suit to set aside a foreclosure sale and to quiet title. There the plaintiffs' uncle, the defendant, had been a cotenant in common with them in a piece of Tennessee land valued at $600,000. Defendant acquired by assignment five promissory notes executed by plaintiffs' father, and in 1965 commenced an action in a Tennessee state court to foreclose a vendor's lien. Service on plaintiffs, residents of Florida, was by publication in accordance with Tennessee law, although their exact residences were easily ascertainable. In that action, in 1967, the uncle bought the property through a straw man for $15,000. The federal court held the foreclosure and sale were void for lack of due process, relying on *Mullane, Walker* and *Schroeder*, and also for fraud.

In this case we are not, of course, deciding the merits of plaintiff's claim or of any defenses. Plaintiff may in fact have had notice of the 1957 action so as to be barred by the statute of limitations, or he may have knowingly slept on his rights. We are concerned here only with the allegations in the petition, where plaintiff pleads no notice. We therefore hold that the facts alleged in the first case, if proved, would be sufficient to justify setting aside the 1957 judgment and sale and the trial court erred in dismissing the case for failure to state a claim upon which relief could be granted.

The order of dismissal in the first case was entered on July 10, 1974. On August 6, 1974, simultaneously with service of his notice of appeal in that case, plaintiff filed a second, independent suit.

The second petition stated a claim for damages. It pleaded the same factual background as the first insofar as it related to the lack of notice of the 1957 suit and execution sale and the 1974 contract to sell the land. It further alleged that Vincent G. Fleming, at the time he took the default judgment against plaintiff and caused his interest in the land to be sold as attorney for Frazee, was also representing plaintiff in other legal matters in Larned and particularly in a lawsuit in Kiowa county. Plaintiff alleged in substance that the 1957 suit was fraudulently based on a spurious claim with intent to deprive him of his property, and that its existence was

fraudulently concealed from him and wasn't discovered by him until after his mother's death on August 6, 1972. Liberally read, the petition claimed that the pending 1974 sale was a continuation of the fraudulent scheme commenced in 1957.

In addition to the defendants in the first action plaintiff joined as defendants in the second action: his brother Roy Weaver and Roy's wife; his brother Chester Weaver; Donald L. Bronson (who we are told is the son of plaintiff's deceased sister) and Donald's wife; and Phil Conboy, who we are told is the now-deceased former manager of the Frazee Grain Company.

All defendants were alleged in general terms to have engaged in a conspiracy to perpetrate a fraud on the plaintiff. The prayer was for damages in the amount of $37,820.00, being the sale price of a one-fourth interest in the land, plus punitive damages and incidental relief.

The second suit, as may be seen, proceeds on the theory that the 1957 judgment and sale were effective to cut off his interest in the land; the value of the lost interest is the measure of the actual damages claimed. Such a theory is, of course, inconsistent with plaintiff's theory in the first suit that the 1957 judgment and sale were void and that he is still the owner of his interest in the land. Such an inconsistency, however, is not fatal. Under K. S. A. 60-208 (e) (2) plaintiff could have combined both causes of action in one suit, pleading in the alternative, regardless of consistency. "The pleader may allege or make contradictory or alternative statements until he finds out which theory, if any, the facts support, and is permitted to shift the theory as the facts develop." *Thompson v. Phillips Pipe Line Co.*, 200 Kan. 669, 672, 438 P. 2d 146. And see, *Beams v. Werth,* 200 Kan. 532, 438 P. 2d 957, Syl. ¶ 9.

The trial court first took up motions to dismiss filed on behalf of all defendants except Blanche Frazee and Vincent Fleming. The basic contention of the moving parties was that the petition failed to allege their participation in the claimed fraud with the particularity required by K. S. A. 60-209 (b). Plaintiff argued that the petition's references to the conduct of "the defendants" in his fraud allegations were sufficient to encompass all defendants, and also asked leave to amend his petition. The trial court sustained the motions to dismiss and denied plaintiff permission to amend. Plaintiff appealed from both orders.

We think plaintiff was entitled to amend. Under K. S. A. 60-215 (a) (as amended) "[a] party may amend his pleading once as a

matter of course at any time before a responsive pleading is served." In commenting on this section the authors of Vernon's Kansas Statutes Annotated state: "A motion is not a pleading. The service of a motion to dismiss does not terminate the right to amend." (§ 215.1, p. 82.) Wright and Miller, in discussing the corresponding Federal Rule 15 (a) say, "[i]t is axiomatic that the complaint may be amended as of course at any time before the answer is served." (Federal Practice and Procedure, § 1483, p. 410.) They go on to say, referring to Federal Rules having exact counterparts in our Code of Civil Procedure:

"The language of Rule 7 (a) indicates that a motion is not a responsive pleading. This fact is important because certain motions may be made before interposing a responsive pleading. Indeed, a motion involving any of the Rule 12 (b) defenses normally must be made before serving a responsive pleading, whenever such a pleading is permitted. Consequently, courts have held that the filing of a motion to dismiss will not prevent a party from subsequently amending without leave of court. Nor does a summary judgment motion made before responding have any effect on a party's ability to amend under the first sentence of Rule 15 (a). Motions of this type are not 'responsive pleadings' in any sense." (*Ibid.* at 411-412.)

Assuming, however, that plaintiff's application for leave to amend came too late to be a matter of right, under 60-215 (a) (as amended), even where leave of the court is required, "leave shall be freely given when justice so requires." Here, if leave is denied plaintiff's cause of action, if he has one, will be irretrievably lost.

Plaintiff sought to amend so as to clearly bring the moving defendants into an alleged fraudulent conspiracy. Whether he would be able to do that either in his pleading or his proof we have no way of knowing. In our opinion, however, he was entitled to try.

As against the defendants Blanche Frazee and Vincent Fleming, the action was dismissed on grounds of res *judicata,* collateral estoppel, and failure to state a claim upon which relief could be granted. We summarized the applicable principles relating to the first two grounds in *Hutchinson Nat'l Bank & Trust Co. v. English,* 209 Kan. 127, 130, 495 P. 2d 1011:

". . . In Kansas the rule of *res judicata* is not binding and does not apply to a different claim for relief even though it may be between the same parties. (*Tidewater Oil Company v. Jackson,* 320 F. 2d 157; *Topeka State Bank v. Waters,* [121 Kan. 126, 245 Pac. 1028, Syl. ¶ 1]; *Smith v. Russ,* [184 Kan. 773, 776, 339 P. 2d 286].) However, when a different claim for relief is filed between the same parties a collateral estoppel may be invoked as to questions and issues shown to have been actually decided in the prior action. (*Green v. Kensinger,* 193 Kan. 33, 39, 392 P. 2d 122; *Burnison v. Fry,* 199 Kan. 277, 428 P. 2d 809.)"

In this instance the second action was in tort for damages, based on the assumption that plaintiff had lost his land. This is quite a different claim from that in the first action to quiet title, based on the assumption that he still owned the land. The doctrine of *res judicata* was clearly inapplicable. Just as clear, it seems to us, was the inapplicability of the doctrine of collateral estoppel. The first action was dismissed on motion; no questions of fact or law were "actually decided" in that action which would necessarily control the outcome of the second action. If we assume the first action was dismissed because any attack on the 1957 judgment and sale was barred by the statute of limitations (a determination we are now setting aside as premature), that fact would not bar the second action for damages for fraud in procuring the judgment and sale.

It may be well to note here that the statute of limitations, *res judicata*, and estoppel are all, under K. S. A. 60-208 (*c*), affirmative defenses which must be raised by answer. It is only when such defenses clearly appear on the face of the petition that it is subject to dismissal under 60-212 (*b*) (6) (as amended) for failure to state a claim. See 5 Wright and Miller, Federal Practice and Procedure, § 1357, pp. 605-610. In neither of plaintiff's cases did the existence of any one of these affirmative defenses incontrovertibly appear on the face of the petition, although they must necessarily have been the basis for the defendants' motions.

The third ground for dismissal—that the petition failed to state a claim—appears to rest on the other two. We are without the benefit of the trial court's reasons for making its ruling, but the defendants assert that it is based on *res judicata* and collateral estoppel. These, as previously noted, are fallacious grounds for dismissing the petition. Defendant Fleming also suggests that it is supported by the statutory time limitations on actions to set aside default judgments and sheriffs' deeds. We have pointed out the fallacy of that argument in the course of our discussion of the first case, above. In addition, as we have stressed, the second case is one for damages for fraud, and has nothing to do with setting aside the 1957 judgment and sale.

From our examination of the petition in the second case we are unable to say that it fails to state a claim upon which relief can be granted. It alleges—and we are concerned only with allegations, not facts—that the defendants engaged in a conspiracy to defraud him of valuable property rights. We cannot say that such allegations are insufficient on their face.

Defendants also raise a number of procedural points. In each case they urge us to affirm because of alleged deficiencies in plaintiff's statement of points on appeal. In the first case we think point No. 5, claiming error in the application of the statute of limitations, was sufficient to encompass the due process claim pleaded in the petition. In the second case some of the points specifically went to the trial court's refusal to allow an amendment of the petition, the erroneous application of the statute of limitations, and the dismissal for failure to state a claim. Although the points could have been more specific, we think they were broad enough to cover all possible grounds for the dismissal. There is also a claim, raised by motion to dismiss, that the filing of the second suit constituted an abandonment of the first. What we have said about the differences between the two actions and plaintiff's right to combine both causes of action in one suit is sufficient to demonstrate that there was no abandonment. The motion to dismiss is denied.

We therefore find it necessary to reverse the order of dismissal in each case. On remand plaintiff should be permitted to amend his petition in either or both cases; consolidation would appear to be in order. Defendants will then be in position to make such attacks on plaintiff's pleadings as are appropriate, or to develop their defenses through answer and discovery or other pretrial proceedings.

The judgments are reversed and the cases are remanded for further proceedings in harmony with this opinion.

APPROVED BY THE COURT.