(688 P.2d 1230)
No. 55,585

J. M. FORD, II, and THE FIRST NATIONAL BANK OF ST. JOSEPH, as co-trustees of Albert L. Bartlett Trust, *Appellants,* v. RUSSELL W. WILLITS and CITIES SERVICE GAS CO., *Appellees,* and RUS-SELL W. WILLITS, *Cross-Appellant,* v. BOARD OF COUNTY COM-MISSIONERS and JEFFERSON COUNTY ABSTRACT CO., *Cross-Appel-lees.*

Opinion filed September 27, 1984. 

*Larry R. Mears* of Duncan, Senecal, Bednar & Mears, Chartered, of Atchison, for the appellants.

*Peter K. Curran* of Petefish, Curran & Immel, of Lawrence, for the appellee and cross-appellant Russell W. Willits.

*Glenn D. Cogswell,* of Topeka, for the appellee Cities Service Gas Co.

*Milton P. Allen, Jr.,* of Allen, Cooley & Allen, of Lawrence, for the cross-appellee Board of County Commissioners.

*Deanne Watts Hay* and *Alan V. Johnson* of Sloan, Listrom, Eisenbarth, Sloan and Glassman, of Topeka, for the cross-appellee Jefferson County Abstract Co.

Before FOTH, C.J., PARKS and BRISCOE, JJ.

BRISCOE, J.: This is a quiet title action in which the plaintiffs, co-trustees, seek to quiet their title to an undivided one-fourth mineral interest which had been sold to defendant Willits at a tax foreclosure sale seven years earlier. The trial court entered summary judgment for defendant Willits, after concluding plaintiffs' action was barred under K.S.A. 79-2804b and by laches.

Our recitation of the undisputed facts in this case begins with the creation of the Albert L. Bartlett Trust (hereinafter referred to as the Bartlett Trust) on July 19, 1940. The trust instrument named Walter C. Bartlett, Albert L. Bartlett, Jr., and Mae Y. Bartlett as trustees and contained the following provisions for appointment of successor trustees:

"If any Trustee hereunder shall die, go to reside abroad, resign or become incapable or unfit to act, then, and in every or any such case and so often as the same shall happen, it shall be lawful for the Trustees continuing to act hereunder, by a writing, executed as a deed, to be recorded, to declare a vacancy to exist in the place of such Trustee, and, in their discretion, to appoint any person or corporation to fill such vacancy, . . . shall be vested with all and the same powers, rights, duties, privileges, immunities, election and discretions as if originally named herein, such declaration that a vacancy exists shall be conclusive evidence thereof as to any purchaser or other person dealing with the Trustees."

In September, 1946, the Bartlett Trust conveyed the following described real estate to Russell W. Willits:

The Southwest Quarter, and the West Half of the Southeast

Quarter, of Section 33, Township 9, Range 20, in Jefferson County, Kansas.

On September 24, 1946, Willits conveyed back to the Bartlett Trust an undivided one-fourth interest in the mineral rights in the above-described property. Willits signed the mineral deed on September 30, 1946, but the deed was not recorded with the Jefferson County Register of Deeds until January 18, 1947. The deed indicated that the conveyance was from Russell W. Willits to "Walter C. Bartlett, Albert L. Bartlett, Jr., and Mae Y. Bartlett, Trustees, their heirs, successors and assigns."

On September 16, 1950, the trustees of the Bartlett Trust leased their property to Cities Service Gas Company for gas storage. The First National Bank of St. Joseph, as depository for the Bartlett Trust, received the lease payment of $60 per year from September 16, 1966, through September 16, 1973.

In 1962, we see the beginning of a shift in trustees of the Bartlett Trust. As a result of the death of Walter C. Bartlett, J.M. Ford, II, was appointed as a substitute trustee for the Bartlett Trust on September 20, 1962. On November 23, 1965, Albert C. Bartlett, Jr., resigned, leaving Mae Y. Bartlett and J.M. Ford, II, as co-trustees. They appointed the First National Bank of St. Joseph as a substitute trustee on December 1, 1965. The appointments of J.M. Ford, II, and the First National Bank of St. Joseph were never recorded in Jefferson County, Kansas.

The undivided one-fourth interest does not appear on the tax rolls of the County Treasurer of Jefferson County until 1964. The Bartlett Trust failed to pay property taxes on its mineral interest for the years 1947 through 1973. As a result, a tax foreclosure action was filed by the county attorney of Jefferson County on July 19, 1973, describing the mineral interest and naming Walter C. Bartlett as a defendant and as owner of the interest. Peyton W. Bartlett, a nephew of Walter C. Bartlett, was personally served. Peyton had no interest in the Bartlett Trust. The Bartlett Trust was neither named as a party defendant in the foreclosure action, nor served by publication or otherwise.

Russell W. Willits purchased the undivided one-fourth mineral interest at the tax foreclosure sale on July 1, 1974. The sale was confirmed and on August 21, 1974, a sheriff's deed to Willits was issued and recorded. Willits promptly informed Cities Service Gas Company by letter of his ownership of the mineral interest and forwarded a copy of his sheriff's deed to it.

On August 19, 1974, an employee of Cities Service telephoned the cashier of the First National Bank of St. Joseph and requested return of the $60 lease payment paid to the Bartlett Trust for the year commencing September 16, 1974. A trust officer of the bank wrote a letter to Cities Service on August 23, 1974, to inquire why the return of the payment was requested. By its letter of August 26, 1974, Cities Service informed the trust officer that the mineral interest had been sold on July 1, 1974, at a tax foreclosure sale and again requested return of the lease payment. On October 3, 1974, a $60 check was written on the Bartlett Trust account, signed by the trust officer, and made payable to Cities Service. On that same date, a corresponding entry was made on the records of the Bartlett Trust maintained by the trust department, indicating return of the money, followed by a legal description of the mineral interest and this statement: "Mineral interest sold at tax foreclosure sale."

On October 29, 1980, Willits entered into a three-year oil and gas lease with Petro-Technology, Inc., Topeka, Kansas, on property which included the mineral interest he purchased at the foreclosure sale. Petro is a corporation engaged in oil and gas exploration.

Plaintiffs J.M. Ford, II, and the First National Bank of St. Joseph, as co-trustees for the Bartlett Trust, filed the quiet title action which gave rise to this appeal on November 3, 1981. Plaintiffs also sought recovery of the value of any oil, gas or other minerals severed from the property. Willits, in turn, filed a third-party complaint against the Board of County Commissioners, Jefferson County, Kansas, and the Jefferson County Abstract Company, alleging a failure to exercise due diligence in their handling of the tax foreclosure.

All parties moved for summary judgment. The trial court held plaintiffs' action was barred by the limitations of time in K.S.A. 79-2804b, and by laches. Summary judgment was granted to the defendants and third-party defendants on the claims asserted in plaintiffs' petition. Having determined the third-party petition was in essence a claim for indemnification against the third-party defendants should the plaintiffs prevail, the trial court dismissed the third-party petition. The plaintiffs appeal, and defendant Willits and third-party defendants Board of County Commissioners and Jefferson County Abstract Company cross-appeal.

The following issues have been raised: (1) Whether the plaintiffs have standing to challenge the tax foreclosure sale; (2) whether this action is precluded under the provisions of K.S.A. 79-2804b; (3) whether the action is barred by laches; and (4) whether the original mineral deed was invalid under the provisions of K.S.A. 1983 Supp. 79-420.

Before proceeding to the more substantive issues, we will first satisfy ourselves that the plaintiffs have standing to bring this quiet title action. Defendant Willits contends the plaintiffs do not have standing because their appointments as successor trustees were never recorded as required by the terms of the trust agreement. Defendant Willits argues this failure to record prohibited the county from discovering plaintiffs' claim to the property and properly notifying them of the foreclosure.

We find this issue is without merit. There is no dispute that plaintiffs are the successor trustees of the Bartlett Trust. The successor trustees are the real parties in interest with standing to bring this quiet title action on behalf of the Trust. See *Thompson v. James,* 3 Kan. App. 2d 499, 502, 597 P.2d 259, *rev. denied* 226 Kan. 793 (1979); K.S.A. 60-217(a). Further, even if the plaintiffs had recorded their appointments, it appears from the record the county made little or no attempt to notify the trustees who were of record, or the Trust itself. The plaintiffs are proper parties to bring suit on behalf of the Trust.

With plaintiffs' standing established, we next consider whether the plaintiffs' quiet title action is barred under K.S.A. 79-2804b since it was not commenced within twelve months after confirmation of the tax foreclosure sale. Plaintiffs contend the tax foreclosure proceedings are void for two reasons: (1) the court failed to obtain jurisdiction over any of the trustees of the Bartlett Trust; and (2) the county's failure to serve the trustees constituted a denial of due process. Since the judgment is void, plaintiffs argue, the limitations of time found in K.S.A. 79-2804b is inapplicable and is not a bar to their quiet title action. The defendants and third-party defendant Board of County Commissioners contend the quiet title action is barred by K.S.A. 79-2804b. They point specifically to the fact that plaintiffs had *actual* knowledge of the foreclosure sale within the twelve-month period following the sale. This knowledge resulted from defendant Willits' notifying Cities Service of his purchase of the

mineral interest, and the subsequent communication of that information to a trust officer who acted on behalf of the Bartlett Trust.

K.S.A. 79-2804b provides:

"*Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes,* interest and costs or any order of sale made under the provisions of K.S.A. 79-2803, or amendments thereto, or any sale made under the provisions of K.S.A. 79-2804, or any amendments thereof, *but every such action or proceeding,* including those brought to set aside judgments on the grounds and in the manner prescribed by the code of civil procedure, *must be commenced within twelve months after the date the sale of real estate,* which was affected by such judgment, order of sale or sale, was confirmed by the court. The time limitation herein fixed for the bringing of any such action or proceeding shall be construed as a condition precedent to the bringing of any such action or proceeding and shall not be construed as a statute of limitations.

"The petition in every such action or proceeding shall show that such action or proceeding was commenced within the time herein limited. *If any such action or proceeding is not commenced within the time herein limited,* or if the petition in any such action or proceeding shall not show that such action or proceeding was so commenced, *the court shall have no jurisdiction of such action or proceeding.* The provisions of this section shall apply to all judgments, orders of sale, and sales whether the purchaser at the foreclosure sale be the county or an individual." Emphasis supplied.

The purpose of the statute was well stated in *Phillips Petroleum Co. v. Moore,* 179 Kan. 482, 494, 297 P.2d 183 (1956), where it was said:

"The statute (79-2804b) fixes a definite time, six months (now twelve months) within which any proceeding may be brought to set aside a judgment. The legislature had authority to make such a limitation; its purpose was two-fold: First, to permit the owner of real estate to make application in the tax foreclosure action or by the institution of an independent legal or equitable action, to open, vacate, modify or set aside the judgment or sale to show, if he could, among other things, that the real estate was not subject to taxation or that the taxes had been paid; and second, that purchasers at tax foreclosure sales should know the limitation of time within which the judgment of the court upon which the sale was predicated, might be attacked."

In *Robertson v. Lemmon,* 189 Kan. 619, 626, 371 P.2d 175 (1962), *cert. denied* 375 U.S. 5 (1963), the court relied on *Phillips* and held that even though appellants were not named in the tax foreclosure petition or publication notice, due process was not violated and the twelve-month limitation was applicable.

The decisions in *Phillips* and *Robertson* were disapproved in part in *Pierce v. Board of County Commissioners,* 200 Kan. 74,

Syl. ¶ 7, 434 P.2d 858 (1967). In an action to set aside a tax foreclosure sale which was brought within twelve months from the sale confirmation date, the court held that publication notice of tax foreclosure proceedings was insufficient to satisfy the requirements of due process since the party's whereabouts and residence could have been readily ascertained. Moreover, the court stated:

"In the [*Robertson v. Lemmon*, 189 Kan. 619, 371 P.2d 175 (1962)] opinion we sought to distinguish the case from *Walker v. Hutchinson City* [352 U.S. 112, 1 L.Ed.2d 178, 77 S.Ct. 200 (1956)] on the ground that *Walker* involved a condemnation proceeding, where the owner had no reason to anticipate his land would be taken. We believe the distinction was inadvisable and cannot be sustained, even though we are not now called upon to decide the precise question presented in *Robertson*." 200 Kan. at 86.

The rule stated in *Walker v. Hutchinson City*, 352 U.S. 112, 1 L.Ed.2d 178, 77 S.Ct. 200 (1956), is that, where feasible, notice of pending proceedings must reasonably be calculated to inform those parties whose legally protected interests might be adversely and directly affected thereby. The court went on to conclude that publication was insufficient where there were no compelling reasons for not providing direct written notice to the owner whose name and address was known to the city.

In *Chapin v. Aylward*, 204 Kan. 448, 464 P.2d 177 (1970), the court took the opportunity to reexamine the question presented in *Robertson:* whether the lack of personal service amounts to a denial of due process and, if so, whether K.S.A. 79-2804b would nevertheless bar an action attacking the foreclosure sale. After first recognizing the authority for the proposition that the time limitation set forth in K.S.A. 79-2804b is *absolute,* regardless of any claimed infirmity in the tax foreclosure proceedings (*Phillips Petroleum Co. v. Moore*, 179 Kan. 482; *Shell Oil Co. v. Board of County Comm'rs,* 171 Kan. 159, 231 P.2d 220, opinion on rehearing, 171 Kan. 595, 237 P.2d 257 [1951]), the court followed the reasoning in *Walker* and held it would not adhere to this "absolute" rule when due process has been violated:

"Notwithstanding the purpose and legislative intent of K.S.A. 79-2804b to bring about finality and stability to tax titles unless attacked within the twelve-months period — we hold that the provision in question must give way to a situation where the facts clearly establish a denial of due process of law. We do not mean to imply — nor has the supreme court of the United States ever declared — that constructive service by publication will never satisfy constitu-

tional requirements of due process. Indeed, there undoubtedly are many instances where the notice provided by publication service is the only method possible. But — just as in the *Pierce* case — such was not true in the case before us.

"We hold, therefore, that as to the intervening defendants Lies — the proceedings in the tax foreclosure action resulted in their being deprived of their property without due process of law — and that the twelve-months time limitation provision of 79-2804b is inapplicable." 204 Kan. at 455.

See also, Note, *Titles—Insufficient Notice in a Tax Foreclosure Action,* 19 Kan. L. Rev. 160 (1970).

The defendants attempt to narrowly construe *Chapin* and to distinguish the present case on its facts. In *Chapin,* the owners had no knowledge of the foreclosure proceeding until three and one-half years after the sale. Here, the plaintiffs had knowledge of the sale after it had occurred but before the twelve-month period had run. Defendants essentially argue that, since plaintiffs could have acted within the twelve-month period, they were not denied due process and the present action would be barred by K.S.A. 79-2804b.

We refuse to adopt this narrow construction of *Chapin.* The failure to join either the trust or the trustees as party defendants and to serve them with process clearly constituted a denial of due process. This denial of due process also deprived the court of personal jurisdiction over the trust and trustees. In *Phillips,* 179 Kan. at 486, the court stated:

"If the summons was fatally defective, the judgment against it was open to the collateral attack. Two essentials to a valid judgment are that the court have jurisdiction of the subject matter, and of the parties whose rights are to be adjudicated (*McFadden v. McFadden,* 174 Kan. 533, 538, 257 P.2d 146)."

In an action to set aside an execution sale, the court in *Weaver v. Frazee,* 219 Kan. 42, Syl. ¶ 3, 547 P.2d 1005 (1976), stated:

"A judgment that is void for lack of due process of law may be set aside at any time despite any statute of limitations otherwise applicable to an action to set aside such a judgment."

Although *Weaver* did not concern the applicability of K.S.A. 79-2804b, the court relied on the principles outlined in *Pierce* and *Chapin.* See also *Schlatter v. Mo-Comm Futures, Ltd.,* 233 Kan. 324, 338, 662 P.2d 553 (1983) (lack of personal jurisdiction rendered judgment void); *Dunn v. City of Emporia,* 7 Kan. App. 2d 445, 643 P.2d 1137, *rev. denied* 231 Kan. 799 (1982) (improper

service in an action against a city was void, not merely voidable). In addition, the following discussion is found at 11 Wright & Miller, Federal Practice and Procedure: Civil § 2862, pp. 198-200 (1973):

"A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."

Further, knowledge of the pendency of an action has no effect on a void judgment. In *American Home Life Ins. Co. v. Heide*, 199 Kan. 652, 654-55, 433 P.2d 454 (1967), the court stated:

"[K.S.A.] 60-309(a) does not contemplate the vacating of a void judgment, and one attacking a void judgment is not bound by its procedural limitations. There is no necessity to defend on the merits against a void judgment before it can be vacated; likewise knowledge of the pendency of the action is an immaterial factor in its vacation; the attack may take various forms, and there is no time limitation."

See also *Barkley v. Toland,* 7 Kan. App. 2d 625, 646 P.2d 1124, *rev. denied* 231 Kan. 799 (1982) (a void judgment may be set aside at any time); 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-204 (1979) (actual knowledge of the pendency of an action is not a substitute for service). Although the case at bar is not procedurally controlled by K.S.A. 60-309(a) (see *Pierce,* 200 Kan. at 78-79), the same reasoning is applicable. See *Chapin,* 204 Kan. at 455 (sale was void because there was no notice).

In summary, plaintiffs were denied due process of law when the court failed to obtain personal jurisdiction over them. Although a third party notified them of the proceedings after the sale, the jurisdictional defect remained. Under the general rule, the lack of personal jurisdiction rendered the tax title void and the limitation provisions of K.S.A. 79-2804b inapplicable. The principles enunciated in *Chapin* have equal applicability to the denial of due process found in this case.

In addition to relying on K.S.A. 79-2804b, the trial court held this action was barred by the doctrine of laches. Plaintiffs were aware of the foreclosure proceedings in October, 1974, but did not commence this action until November, 1981. In the meantime, defendant Willits continued to collect storage fees under a lease and also entered into a production lease with Petro-Technology, Inc.

Having concluded that the failure to notify plaintiffs of the foreclosure rendered the judgment void, it follows that laches is

also not a viable defense. In *Barkley v. Toland,* 7 Kan. App. 2d at 630, this court held "a motion made to set aside a *void* judgment can be made at any time, since the passage of time cannot cure the defect in the judgment." The court relied in part on 7 Moore's Federal Practice § 60.25 [4], pp. 314-15 (2d ed. 1982), which states:

" 'The theory underlying the concept of a void judgment is that it is legally ineffective — a legal nullity; and may be vacated by the court which rendered it at any time. Laches of a party can not cure a judgment that is so defective as to be void; laches cannot infuse the judgment with life.' " 7 Kan. App. 2d at 629-30.

The defendants and third-party defendants also contend equitable estoppel bars the plaintiffs' quiet title action. A party who asserts estoppel must show prejudice. *Stratmann v. Stratmann,* 6 Kan. App. 2d 403, 628 P.2d 1080 (1981). See also *Cosgrove v. Young,* 230 Kan. 705, 716-20, 642 P.2d 75 (1982).

In *Board of Johnson County Comm'rs v. Roberts,* 231 Kan. 135, 140, 643 P.2d 138 (1982), the court rejected a claim of estoppel in a tax foreclosure proceeding:

"Furthermore, the doctrine of estoppel has no application because Campbell, the purchaser, had full knowledge of Anderson's and Carson's claim of interest before and during the sale and in no way changed his position in reliance on any representations made by Anderson and Carson. This court, on several occasions, has held that a purchaser at a tax foreclosure sale does not occupy the status of an innocent purchaser or a purchaser in good faith but is one to whom the rule of *caveat emptor* applies. [Citations omitted.] Under the undisputed facts in this case, the appellees, Anderson and Carson, were not barred from asserting their right to have the tax foreclosure sale set aside on the basis of a claim of either waiver or estoppel."

Here, Willits, the purchaser, had full knowledge of the Trust's interests in the property since he had conveyed it to the Trust in 1946. Plaintiffs, on the other hand, had no knowledge of the foreclosure proceedings prior to the sale. In light of the rule of caveat emptor stated in *Roberts,* defendant Willits can show no prejudice or detrimental reliance arising from his purchase of the property.

We proceed next to the validity of plaintiffs' mineral deed. In a quiet title action, the plaintiff has the burden of establishing his title. To prevail, the plaintiff must rely on the strength of his own title, and not the weakness of his adversary's title. *Beams v. Werth,* 200 Kan. 532, 543, 438 P.2d 957 (1968). The defendants and the third-party defendants contend plaintiffs' 1946 mineral

deed is void because plaintiffs have not complied with K.S.A. 1983 Supp. 79-420.

We look first to the statute in effect when the mineral deed was executed, G.S. 1935, 79-420, and then to the Supreme Court's interpretation of the statute. G.S. 1935, 79-420 provided:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided,* That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

The statute was enacted in 1897 and has not been changed in substance since that time. See L. 1897, ch. 244, § 1; L. 1911, ch. 316, § 20; R.S. 1923, 79-420; G.S. 1935, 79-420; L. 1959, ch. 365, § 10; L. 1982, ch. 391, § 29.

G.S. 1935, 79-420 was clarified in *Johnson v. Johnson,* 150 Kan. 541, 543, 95 P.2d 329 (1939), as follows:

"It will be noted that two conditions must exist before the leases or reserves shall become void, namely, failure to record within ninety days after execution, and failure to list for taxation. *Unless both of these conditions are present the leases or reserves are not void."* Emphasis supplied.

In *Becker v. Rolle,* 211 Kan. 769, 508 P.2d 509 (1973), our Supreme Court examined K.S.A. 79-420 and reaffirmed its earlier interpretation of the statute's language:

"Under the provisions of K.S.A. 79-420, a mineral deed which is not recorded within ninety days after execution is void if not listed for taxation. Compliance with one of the alternative requirements of the statute is a condition precedent to the vesting of title in the transferee of such mineral deed." Syl. ¶ 1.

In the case at bar, the deed conveying the mineral interest to the Bartlett Trust was executed on September 30, 1946, but was not recorded until January 18, 1947, more than ninety days later. The plaintiffs have not established their compliance with the ninety-day recording requirement, one of the alternatives of the statute.

Although the statement of uncontroverted facts adopted by the trial court indicates no taxes were paid on the mineral interest

from 1947 through 1973, there was no finding regarding when the mineral interest appeared on the tax rolls. The record indicates the mineral interest first appeared on the tax rolls in 1964. The parties all agree to this fact, as indicated by their briefs filed with this court and the trial court. If the mineral deed was recorded on January 18, 1947, but the property was not on the tax rolls until 1964, can we conclude the deed was timely "listed for taxation" under the second alternative of the statute?

The listing for taxation described in G.S. 1935, 79-420 required only that the grantee of a mineral deed take prompt affirmative action to bring his property to the attention of the taxing authorities. Recording the mineral deed before the date designated in the statute, or before March 1, was sufficient to list the property for taxation. Once the deed was recorded, it became the responsibility of the county officials to exchange the information of record and place the property on the tax rolls. *Davis v. Skelly*, 159 Kan. 282, 283-86, 154 P.2d 114 (1944) (deed valid when recorded more than ninety days from execution, but before March 1); *Templing v. Bennett*, 156 Kan. 68, 72, 131 P.2d 904 (1942) (deed valid when recorded more than ninety days from execution, but refused by clerk when presented for taxation before March 1); *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 95, 69 P.2d 4 (1937) (deed void when recorded more than ninety days from execution, and after March 1); *Richards v. Shearer*, 145 Kan. 88, 93, 64 P.2d 56 (1937) (deed valid when recorded more than ninety days from execution, but before March 1).

The plaintiffs have listed their mineral interest for taxation by recording their deed on January 18, 1947. The plaintiffs' mineral deed is valid, having satisfied the second alternative of the statute.

The trial court's order granting summary judgment to defendants and third-party defendants, and denying plaintiffs summary judgment is reversed and remanded for further proceedings. In addition, the dismissal of the third-party petition is reversed and remanded with directions to reinstate the third-party petition.