NOT DESIGNATED FOR PUBLICATION

No. 122,047

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARLENE SEWELL and JERRY SEWELL,
*Appellees*,

v.

KENNETH LAWSON and KAREN LAWSON,
*Appellants*.


MEMORANDUM OPINION


Appeal from Cherokee District Court; KURTIS I. LOY, judge. Opinion filed February 5, 2021. Affirmed.


*Steve A. Stockard*, of Wilbert & Towner, P.A., of Pittsburg, for appellants.


No brief filed by appellees.


Before BRUNS, P.J., GREEN and ATCHESON, JJ.


PER CURIAM: This case involves a dispute between neighboring landowners over the use of a private roadway located on or adjacent to real property that they own in rural Cherokee County. Darlene and Jerry Sewell brought this action against Kenneth and Karen Lawson to quiet title and requesting injunctive relief. Following a bench trial, the district court found that the Sewells and other interested landowners have the right to use the private roadway for accessing their respective properties. The district court also found that the Sewells use of the private roadway was appropriate. On appeal, the Lawsons' contend that the district court erred in reaching its decision. Based on our review of the record, we find no error. Thus, we affirm.

1

The Sewells and Lawsons collectively own four adjacent tracts of land in rural Cherokee County. While the Sewells own the northern and southern tracts, the Lawsons own two tracts in between them. In addition, there is another small tract in between the Sewell and Lawson properties owned by Debra Clark. However, she is not a party to this lawsuit. For many years, the Sewells and Lawsons have shared a 20-foot gravel private roadway along the westernmost boundary of each of their tracts that connects their properties to a county road.

Prior to 1915, the property now owned by the Sewells and Lawsons was all owned by the Cooper family as part of a single 80-acre tract. On August 7, 1915, the Coopers divided the property into multiple smaller tracts and deeded it to their children. In doing so, the Coopers provided an exception for a 20-foot private roadway located on the west side of the real property to allow for access to the county road located to the south. For more than 100 years, as the property was transferred and further subdivided, the landowners continued to pass an exception or easement for the private roadway to subsequent owners.

In 1989, the Lawsons purchased one of the two tracts that they currently own that was originally part of the Cooper property. About two and a half years later, the Lawsons purchased another tract of land that was originally part of the original 80 acres. In 1994, the Sewells entered into a "contract for deed" for the tract of land directly to the north of the Lawsons' property, which was also originally part of the Cooper property. On this land, the Sewells built their residence and operated a small-scale cow-calf operation. Later, in 2015, the Sewells also purchased the tract of land directly to the south of the Lawsons' property.

Although Cherokee County does not maintain the private roadway, it has designated the gravel road as "Southeast 62nd Drive, Galena, Kansas" for emergency purposes. It is undisputed that the Sewells, Lawsons, and Clark would be "landlocked" except for the private roadway located on the west side of their respective properties. For several years, it appears that the parties lived peacefully as neighbors and shared the private roadway without incident.

In 2014, after Jerry Sewell lost his job, he started operating a gravel hauling business from his home. The sole proprietorship—known as "JDS Trucking"—owns a dump truck, a semi-truck, and several other pieces of equipment. The record reflects that Sewell is the only operator of the trucks and equipment. According to Jerry Sewell, he typically leaves with a truck on weekday mornings and does not return home until the evening. It is undisputed that Sewell also operates a tractor to transport hay on the private roadway.

According to the Lawsons, Jerry Sewell drives trucks on the private roadway—which is only about 15 feet away from their residence—four or five times a day on weekdays. Likewise, they assert that he also does so on some Saturdays. Because Kenneth Lawson believed the Sewells were using the private roadway in an unreasonable manner, he began confronting them about the situation. At various times, he blocked the private roadway with his truck. In addition, he confronted guests who had been invited to the Sewells' residence for allegedly driving too fast. These actions led to the Sewells calling for the assistance of the Cherokee County Sheriff's Department on several occasions.

On May 16, 2018, the Sewells filed this suit in the Cherokee County District Court, seeking to quiet title to allow them to continue to use the private roadway in an unrestricted manner. In addition, the Sewells asked for injunctive relief. The next day, the district court entered a temporary restraining order in favor of the Sewells. Following a

3

hearing, the district court allowed the temporary restraining order to remain in place until a trial could be held. However, it placed certain limitations on the use of the private roadway during the pendency of this action.

On August 9, 2019, the district court held a one-day bench trial. At trial, Jerry Sewell, Kenneth Lawson, and Karen Lawson testified. In addition, several exhibits were admitted into evidence, including an "Owners and Encumbrances Report" prepared by First American Title Insurance Company and an aerial photo of the properties in question. Significantly, the Lawsons stipulated on the record that "we do not contest that there is a perpetual easement for roadway purposes" which had not been abandoned. At the conclusion of the bench trial, the district court took the case under advisement and kept the temporary restraining order in place until a final decision could be entered.

On September 10, 2019, the district court issued a Memorandum Decision and Order in which it granted judgment in favor of the Sewells. In its order, the district court discussed the history of the real property, the creation of the private roadway, and the events surrounding the dispute between the parties. After doing so, the district court discussed the relevant law relating to the interpretation of deeds and, in particular, exceptions. Finally, the district court concluded that in 1915, the Cooper family divided and transferred the 80 acres they originally owned into smaller tracts. In doing so, they created—by exception—a private roadway that ran along the western boundary of the original property.

Specifically, the district court found:

"This is a private roadway solely for the use of the various tracts of real estate that abut the same. This Court views the roadway as a separate servient estate. Each privately owned tract of land that abuts the roadway is viewed as the dominant estate to this roadway and correspondingly is obligated to assist in maintaining the roadway. It cannot be encumbered in any way by any of the adjoining landowners and each landowner is

4

free to use the roadway at their pleasure without restriction from other landowners. It is free to be used by these landowners the same as if it were a public roadway. The owners and their guests may use the same for accessing the property . . . .

"With regard to the complaint by Mr. Lawson that the use of farm implements[,] a dump truck, and semi-tractor and trailer are unreasonable, the Court considers this from an objective view, rather than the narrow and subjective view of the Defendant. If damage is being done to the roadway which is not easily repaired, then this Court might view the complaint as appropriate. There is no evidence that is occurring, at least not occasioned by the Sewell[s]. The use of the dump truck, semi-tractor and trailer, and various farm implements is an appropriate use of this roadway considering the rural setting and location."

ANALYSIS

At the outset, we note that the Lawsons cite the standard of review for injunctive relief in their brief. Yet, there is no mention of an injunction being granted in the district court's Memorandum and Order. Instead, a review of the record indicates that the district court entered a final judgment on the quiet title claim brought by the Sewells.

Here, the Sewells filed a petition to quiet title and seeking injunctive relief. K.S.A. 60-1002(a) permits "any person claiming title or interest in . . . real property [to bring a legal action] against any person who claims an estate or interest therein adverse to him or her, for the purpose of determining such adverse claim." To prevail at trial on their claim to quiet title, the Sewells had the burden of proof based on the strength of their own title. See *Bucklin National Bank v. Hayse Ranch*, 58 Kan. App. 2d 715, 721, 475 P.3d 1 (2020); *Ford v. Willits*, 9 Kan. App. 2d 735, 745, 688 P.2d 1230 (1984), *aff'd* 237 Kan. 13, 697 P.2d 834 (1985).

On appeal, the Lawsons contend that the district court ignored the evidence presented at trial in ruling in favor of the Sewells. They also suggest that we should find

5

that the Sewells can only use the private roadway for "ingress and egress by small vehicles for private residential purposes only." However, our role is not to substitute our judgment for that of the district court. Rather, our role is to review the district court's findings of fact and conclusions of law to determine whether the factual findings were supported by substantial competent evidence and whether they are sufficient to support the legal conclusions. See *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017); *Brown v. ConocoPhillips Pipeline Co.*, 47 Kan. App. 2d 26, 36, 271 P.3d 1269 (2012).

In reviewing the record on appeal, we are not to reweigh the evidence or make independent credibility findings. In other words, we must defer to the district court's assessment of conflicting evidence. *Gannon*, 305 Kan. at 881. Moreover, we are required to review the evidence presented at trial in the light most favorable to the prevailing party—in this case the Sewells. See *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1195, 221 P.3d 1130 (2009). Nevertheless, we exercise unlimited review in determining if that evidence warrants the ultimate legal conclusions. *Gannon*, 305 Kan. at 881.

As a general rule, our interpretation of deeds and other written documents is unlimited. See *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014); *Stroda v. Joice Holdings*, 288 Kan. 718, 720, 207 P.3d 223 (2009). However, the parties do not dispute that the Sewells have a right to use the disputed property located on the west side of their respective properties for "roadway purposes" and that they have not abandoned this right. Instead, the Lawsons argue that the operation of large trucks and farm equipment on the shared roadway by the Sewells is unreasonable.

Viewing the evidence presented at trial in the light most favorable to the Sewells, we find that the district court's conclusion regarding the "appropriate use" of the private roadway is supported by substantial competent evidence. A review of the record reveals that the 20-foot roadway that ran along the western boundary of the real property owned

by the Coopers was created by an exception in 1915 when the property was initially subdivided into separate tracts. The evidence shows that the roadway exception—sometimes referred to as an easement—passed to subsequent owners. For example, the general warranty deed passing legal title to the Sewells in 2001 expressly states that the land is subject to "a perpetual easement for roadway purposes located on the West side" of the property.

A review of the record also shows that there was evidence presented at trial to support the district court's finding that "the private roadway serves all land abutting the road and is the sole means of ingress and egress to the properties abutting the roadway." The evidence also reveals that the Lawsons were "on notice" regarding the existence of the private roadway. In fact, they agreed at trial that Sewell "still has a perpetual easement for roadway purposes and he hasn't abandoned that." Furthermore, there is evidence in the record to support the district court's finding that "the West twenty (20) feet can be used for nothing but a roadway."

There is also substantial competent evidence in the record to show that the real property in question—including the private roadway—is located in a rural part of Cherokee County as found by the district court. This is confirmed by the testimony presented at trial as well as by the aerial photograph taken of the real property in question that was admitted into evidence. Of course, a district court sitting in Cherokee County is much more likely to know the "setting and location" than an appellate court sitting in Topeka.

Turning to the question of whether the district court's factual findings are sufficient to support the legal conclusions, we look to the language used in the 1915 deed originally creating the private roadway as well as the other documents in the record. See *Amoco Production Co. v. Wilson, Inc.*, 266 Kan. 1084, 1088, 976 P.2d 941 (1999); *In re Marriage of Wade*, 20 Kan. App. 2d 159, 162, 884 P.2d 736 (1994). "[T]here is little, if

7

any, need to give much weight to circumstantial evidence of their intent." *Stroda*, 288 Kan. at 721. "The expressed terms of the grant or reservation are controlling." *Aladdin Petroleum Corp. v. Gold Crown Properties, Inc*., 221 Kan. 579, 584-85, 561 P.2d 818 (1977).

The Lawsons contend that the district court erred by not considering the historical use of the roadway. However, the language creating the private roadway—as well as the language passing the right to use the roadway to the Sewells—is plain, simple, and concise language. This plain and unambiguous language support's the district court's conclusion that the Sewells have the right to use private roadway in an appropriate manner. We note that a private road is defined in K.S.A. 8-1451 as "every way or place in private ownership and used for vehicular travel by the owner or those having express or implied permission from the owner, but not other persons." See *Schallenberger v. Rudd*, 244 Kan. 230, 234, 767 P.2d 841 (1989) (A roadway is "used for vehicular travel.").

In other words, the private roadway was created to be used for vehicular travel by the adjoining property owners and by those to whom they give permission to use the road. As the parties recognize, if the private roadway did not exist, they would be "landlocked" as would the other adjoining landowner. Based on the evidence, we do not find that the district court erred in finding that the adjoining landowners have the right to use the private roadway without interference from the other landowners.

We note that the Lawsons did not offer any evidence that the current use of the private roadway by the Sewells violated any zoning laws or land use restrictions. Likewise, they did not introduce any evidence that the Sewells' use of the roadway diminished the value or marketability of their property. Thus, based on the evidence in the record supporting the district court's finding regarding "the rural setting and location" of the private roadway, we do not find that it was unreasonable or erroneous as a matter

of law for the district court to conclude that "[t]he use of the dump truck, semi-tractor and trailer, and various farm implements is an appropriate use of this roadway . . . ."

Finally, we note that the district court recognized in its Memorandum and Order that circumstances could potentially arise in which the Lawsons might be able to seek legal recourse in the future "[i]f damage is being done to the roadway which is not easily repaired." However, at this point, the district court found that the evidence did not support that the Sewells were causing such damage by their use of the private roadway. Also, although we affirm the district court's conclusion that the landowners—as well as their invited guests—are permitted to use the private roadway for accessing their respective property without interference, we take no position on what acts may or may not constitute "a criminal trespass." Rather, that would be dependent on the particular facts and circumstances presented. We are hopeful that the parties will be good neighbors and that there will be no need for the parties to seek court intervention again in the future.

Affirmed.