(597 P.2d 259)

No. 49,988

Cecilia M. Thompson, *Appellant*, v. Jeffrey H. James, *Appellee.*

Petition for review denied September 11, 1979.

Opinion filed July 13, 1979.

*Bruce F. Landeck,* of Overland Park, and *Lyndus A. Henry,* of Olathe, for the appellant.

*Robert B. Van Cleave,* of McAnany, Van Cleave & Phillips, of Prairie Village, for the appellee.

Before Parks, P.J., Abbott and Swinehart, JJ.

Parks, J.: This is an appeal by plaintiff-appellant in an action for negligent trespass. The trial court granted summary judgment in favor of the defendant on the ground that the plaintiff was not

the real party in interest and was therefore barred from bringing the action by K.S.A. 60-217(*a*).

The facts are simple and are not in dispute. On December 28, 1974, the home of Cecilia Thompson was struck by a car driven by Jeffrey James. The building and contents were extensively damaged, and Ms. Thompson filed a damage claim with her insurer, Maryland Casualty Company. On December 22, 1976, Ms. Thompson signed a sworn proof of loss statement in which she designated her "whole loss" as $8,190.07, which sum she actually received from the insurer. At the same time, she signed a subrogation agreement by which all rights, claims, and interest that she may have had were subrogated to Maryland Casualty.

The next day, Ms. Thompson filed suit in the district court of Johnson County against Jeffrey James. The suit sought additional damages that arose from the accident which were above and beyond the coverage provided by the homeowner's policy— damages which eventually were claimed as totaling $5,784. James raised as a defense the fact that Ms. Thompson had been compensated for her losses, had signed a subrogation agreement, and was no longer a real party in interest to any action arising out of the accident. The trial court found this reasoning persuasive and granted summary judgment for defendant, despite plaintiff's claim that since she was seeking damages not covered by her policy and for which she had not been compensated, she was still very much a real party in interest. The sole substantive issue before this court on appeal is whether plaintiff was in fact a real party in interest.

Before dealing with the main issue, however, a jurisdictional challenge by defendant must be dealt with. Defendant's assertion that this court is without jurisdiction to hear this appeal is best understood when considered in the context of the procedural history of this case.

On August 18, 1977, the trial court granted defendant's motion for summary judgment, though due to an inadvertent delay the resulting order was not sent to plaintiff's counsel until September 2. Although the record fails to disclose it, plaintiff soon thereafter moved the court to set aside its order on the basis of excusable neglect, as provided for by K.S.A. 60-260(*b*). This motion was granted at a hearing held on October 24, and the plaintiff finished preparing information for the court concerning her losses. The

defendant's motion for summary judgment was heard again on January 13, 1978, and was again granted. Plaintiff's motion for a new trial was denied, and a timely appeal was filed to this court.

Appellee's argument is that appellant's motion under 60-260(*b*) to set aside the August 18 order cannot be used as a means of circumventing time limits for taking an appeal. As no appeal was taken from the August 18 order within the 30-day period required by K.S.A. 60-2103(*a*), appellee asserts that this court has no power to review the order.

The appellee is correct in stating that a 60-260(*b*) motion does not affect the finality of a judgment or suspend its operation, nor does it toll the time for filing a notice of appeal from such judgment. *Giles v. Russell,* 222 Kan. 629, Syl. ¶ 2, 567 P.2d 845 (1977). Where no appeal is taken from a judgment within the 30-day time limit, and where the only motion filed is one pursuant to 60-260(*b*) which is *denied,* an appellate court has no jurisdiction to review the underlying judgment. *Giles v. Russell,* 222 Kan. at 632.

The situation here, however, is different from that in *Giles.* The appellant-plaintiff filed a motion to set aside the August 18 order sometime in early September. This motion was *granted* on October 24, and since no appeal was taken, became final 30 days later. *Satterfield v. Satterfield,* 221 Kan. 15, 558 P.2d 108 (1976); *Taber v. Taber,* 213 Kan. 453, 455, 516 P.2d 987 (1973). Once the order setting aside the earlier order became final, the effect of summary judgment was vacated and the lawsuit continued. While more than 30 days did elapse between the grant of summary judgment and the order vacating it, this is of no importance due to the outcome, *i.e.,* the plaintiff was successful and did not need to appeal. Only if she had lost would a situation like that in *Giles* have arisen. This court's jurisdiction has been properly invoked.

The trial court's eventual grant of summary judgment was on the ground that the plaintiff was not the real party in interest (as required by K.S.A. 60-217[*a*]) since she: (1) signed a proof of loss statement to her insurance company stating that the "whole loss and damage" amounted to $8,190.07, which the company paid in full, and (2) signed a subrogation agreement releasing to the insurer all of her rights and claims under the policy. On the other hand, plaintiff asserts that the trial court erred because her policy did not cover all of her losses and expenses. Accordingly, she is

the real party in interest because she is only seeking to recover the losses and expenses which were not covered by the policy.

K.S.A. 60-217(a) requires that every action be prosecuted in the name of the real party in interest. The real party in interest is the person who possesses the right sought to be enforced, and is not necessarily the person who ultimately benefits from the recovery. *Lawrence v. Boyd,* 207 Kan. 776, Syl. ¶ 1, 486 P.2d 1394 (1971). The real party in interest requirement has as one of its main purposes "the protection of the defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action so that if a judgment be obtained it is a full, final and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party." *Torkelson v. Bank of Horton,* 208 Kan. 267, 270, 491 P.2d 954 (1971).

The deciding factor in the application of 60-217 is whether the amount received is in full or only partial satisfaction of the loss. *Cullen v. Atchison, T. & S. F. Rly. Co.,* 211 Kan. 368, 374, 507 P.2d 353 (1973). If the amount received is in full satisfaction of the loss, the insurer is the real party in interest; if the amount received is only partial, it is the insured. As the court stated in *J. C. Livestock Sales, Inc. v. Schoof,* 208 Kan. 289, 290-291, 491 P.2d 560 (1971):

"When a loss is covered but partially by insurance, the insured is the proper party under this statute to bring suit for the entire loss. The insured will then hold in trust for the insurer such part of the recovery as the insurer has paid. (*Ellsaesser v. Mid-Continent Casualty Co.,* 195 Kan. 117, Syl. ¶ ¶ 1 and 2, 403 P.2d 185; *Clark v. Missouri Pac. Rld. Co.,* 134 Kan. 769, 8 P.2d 359.)

"When such loss is fully covered and paid the rule is otherwise, provided the policy of insurance contains a subrogation clause whereby the insurer succeeds to rights of the insured.

"When a loss is fully paid by an insurer and the insurer becomes subrogated to all rights of the insured, the right of action against the wrongdoer vests wholly in the insurer. In such case the insurer becomes the real party in interest and must undertake the maintenance of the action for reimbursement. (*Railroad Co. v. Insurance Co.,* 59 Kan. 432, 53 Pac. 459; *Ellis Canning Co. v. International Harvester Co.,* 174 Kan. 357, 255 P.2d 658.)"

It is true, as the trial court noted, that the plaintiff signed a proof of loss form which stated that her "whole loss" amounted to $8,190.07, which the insurer paid in full. We conclude, however, that the term "whole loss" as used in the insurance statement is not equivalent to the *total* loss resulting from the accident. The former term only encompasses the loss which is covered by the

insurance policy, which in this case was limited to the structure, unscheduled personal property therein, and certain additional living expenses while the house was being repaired. It is the *total* loss resulting from the accident, not the loss covered by insurance, which is the deciding factor in the application of 60-217.

That the "whole loss" covered by the policy is not equivalent here to the total loss resulting from the accident is demonstrated when the list of items attached to the proof of loss statement is compared with plaintiff's own list of the items for which she was not compensated by her insurer. Certain items on the former list are checkmarked, indicating that they were not covered by the insurer. At least six of these items not paid by the insurer appear on plaintiff's own list of items, which forms the basis for this suit.

While it is not clear that plaintiff could actually recover for any or all of the items claimed (medical bills, prescription drugs for her nervous condition, loss of salary, etc.), this is a proceeding based on summary judgment, and in such cases there must be *no* genuine issues of material fact before such a disposition will be allowed. *Western Surety Co. v. Loy,* 3 Kan. App. 2d 310, 311, 594 P.2d 257 (1979); *Mildfelt v. Lair,* 221 Kan. 557, 561 P.2d 805 (1977). From the evidence presented, it is clear that the $8,190.07 which the plaintiff received from her insurer did not cover some items that she claims as damages, and therefore constituted only *partial* satisfaction of the total loss she feels was caused by the accident. Under the rules stated in *J. C. Livestock,* plaintiff is a real party in interest and may properly bring suit.

The fact that plaintiff signed a subrogation agreement does not change this result. In *City of New York Ins. Co. v. Tice,* 159 Kan. 176, 152 P.2d 836 (1944), the court discussed the rules applicable to situations in which an insurance policy contains a subrogation clause. One such situation was described by the court as follows:

"*Where the loss has not been fully covered by the insurance payment, and the property owner still asserts a claim against the wrongdoer.* In this case both he and the insurer are real parties in interest, but action should be brought by the property owner, who will hold as trustee for the insurer in respect to such part of the amount recovered as the insurer has been compelled to pay under the policy. If, in such a situation, the property owner refuses to bring action, justice requires that the insurer be permitted to bring the action." (p. 186.)

The subrogation agreement here contains similar language in that it subrogates the insurer, to the extent of its discharged liability, to all of the insured's rights, claims, and interest. For

this reason, the rule announced in *Tice* is applicable to the instant case insofar as the total loss caused by the accident has not been fully covered by the $8,190.07 payment and plaintiff still asserts a claim against the defendant.

While the fact that the insurer and the defendant have already reached a settlement is a complicating factor, it too does not change the result. If there were no settlement, the plaintiff would be entitled to bring suit for the entire loss and hold in trust for the insurer that part of the recovery representing the claims which the insurer has paid. Since a settlement has already been made, the plaintiff is only entitled to bring an action for the claims not covered by the insurance policy, as the subrogation agreement bars any recovery on the claims which the insurer has already paid. The other arguments of appellee on this point are rejected as being without merit.

We conclude that the trial court erred when it found that plaintiff was not a real party in interest, because the total loss caused by the accident was not covered by the settlement, and further suit was not precluded by the subrogation agreement.

The order granting summary judgment to defendant is reversed, and the case remanded to the trial court.