Zack K. BRINKERHOFF, Jr., and Jet Alaska, Inc., Appellants and Cross-Appellees,

v.

SWEARINGEN AVIATION CORP., Appellee and Cross-Appellant.

Nos. 5967, 6002.

Supreme Court of Alaska.

May 6, 1983.

Charles Hagans, Sanford M. Gibbs, Hagans, Brown & Gibbs, Anchorage, for appellants and cross-appellees.

David H. Thorsness, R. Craig Hesser, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee and cross-appellant.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

Zack Brinkerhoff, Jr. and Jet Alaska, Inc., the plaintiffs at trial in the superior court, appeal, and Swearingen, the defendant and cross-claimant below, cross-appeals from trial court rulings in a products liability case arising out of an airplane crash.

The accident occurred on February 3, 1977. The damaged plane [the Metro II] was manufactured by Swearingen Aviation Corp. The Metro II was owned by Brinkerhoff and leased to his wholly-owned corporation, Jet Alaska. The damage to the hull was incurred when the plane rolled off the runway during a takeoff while the pilot was employing the electromechanical nose gear steering system.

Prior to this incident, Jet Alaska pilots had encountered two "hardovers"[1] during landings while the steering system was turned off.

Brinkerhoff had insured the plane for $950,000 and on June 8, 1977, he collected $672,500 for his property damage.[2] Brinkerhoff also received $277,500 from his sale of the damaged hull, bringing the total amount recouped to $950,000.

Brinkerhoff, with the authorization of his insurer, brought a tort suit against Swearingen. On the day prior to trial Brinkerhoff's insurers settled their subrogated claim with Swearingen and its underwriters for $375,000. Brinkerhoff continued to pursue his claim, alleging that the amount of property damage he suffered equalled $1,050,000[3] and that he had been underinsured. Brinkerhoff only sought to recover damages to the extent that they exceeded $950,000. Jet Alaska sued to be compensated for the damage it sustained as a result of its loss of use of the Metro II.

At trial, Swearingen admitted that the actuator component of the nosegear had an inherent design defect which caused the plane to veer off sharply to one side. In defending against Jet Alaska's claim, Swearingen contended that Jet Alaska's negligence was in fact the cause of the crash. Although Jet Alaska requested a directed verdict on the comparative negligence issue, the trial judge submitted the issue to the jury. Swearingen also contended that repair or replacement could have been obtained earlier than the October 7, 1977 date claimed by Jet Alaska.

At the conclusion of the trial, special interrogatories were submitted to the jury. The jury found $96,100 in damages for Jet Alaska's loss of use without specifying the time period covered and then reduced the award by the 60% attributed to that plain-

---

1. A hardover occurs when the nose wheel of the plane makes a sharp turn in a direction not intended by the pilot.

2. The figure of $692,600 on the insurance Statement of Loss form included the payment of $20,100 for insured losses other than property damage which are not relevant to this appeal.

3. The insurance form's characterization of the $950,000 as representing the "whole loss" incurred, while it may have some evidentiary value, does not foreclose the insured from asserting a claim for damages in excess of that amount. Such terminology must be interpreted in context. It has meaning only insofar as it relates the amount of property damage to the amount of insurance coverage. *See Thompson v. James,* 3 Kan.App.2d 499, 597 P.2d 259 (Kan. App.1979):

> We conclude, however, that the term "whole loss" as used in the insurance statement is not equivalent to the *total* loss resulting from the accident. The former term only encompasses the loss which is covered by the insurance policy, ... It is the *total* loss resulting from the accident, not the loss covered by insurance, which is the deciding factor in the application of [the Kansas real party in interest statute].

*Id.* 597 P.2d at 263 (emphasis in original).

tiff's negligence. The court awarded pre-judgment interest beginning October 7, 1977. Jet Alaska appeals the denial of its motions for directed verdict and JNOV on the issue of comparative negligence. It seeks to recover the full jury award of $96,100.

With respect to Brinkerhoff's claim for damage to the plane itself, the only request made of the jury was to determine the fair market value of the Metro II at the time of the crash. It was not asked to reach a verdict on the issue of liability or damages although such an instruction had been requested by Brinkerhoff. The jury found the fair market value to be $950,000. Consequently, the trial judge dismissed Brinkerhoff's cause of action and, finding Swearingen to be the prevailing party, awarded it costs and attorney's fees under Alaska Rule of Civil Procedure 82. Brinkerhoff appeals both of these decisions.

Prior to the conclusion of the trial Swearingen had made a joint offer of judgment to Brinkerhoff and Jet Alaska pursuant to Alaska Rule of Civil Procedure 68. The offer was declined. The ultimate verdict for both plaintiffs was less than the $50,000 Swearingen had offered, but the trial judge refused to apply Rule 68's sanction and assess costs against the plaintiffs because he did not believe that Rule 68 encompassed joint offers. Swearingen challenges this ruling in its cross-appeal.

## COMPARATIVE NEGLIGENCE

Jet Alaska contends that the superior court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on the issue of comparative negligence. Swearingen asserted, as a defense to liability, that Jet Alaska had voluntarily and unreasonably continued to use the plane after learning that it was defective.

The standard of review for motions for directed verdict or JNOV is "to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment." *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974) (footnote omitted); *see also City of Fairbanks v. Nesbett,* 432 P.2d 607, 609–10 (Alaska 1967); *Howarth v. Pfeifer,* 423 P.2d 680, 682 (Alaska 1967).

Swearingen bore the burden of proving Jet Alaska's actual knowledge of the defect as part of its affirmative defense. *Ridgeway v. North Star Terminal & Stevendoring Co.,* 378 P.2d 647, 651 (Alaska 1963). Swearingen attempted to establish Jet Alaska's actual knowledge through the admissions of Larry Green, Jet Alaska's Director of Maintenance. In a deposition read at trial, Green stated that he knew the faulty actuator was the cause of problems Jet Alaska was having with the Metro II. However, he subsequently changed his testimony to state that he only discovered the cause of previous trouble through information he learned after the accident in issue.

In addition, Swearingen introduced evidence indicating that Jet Alaska had knowledge of the defect because of the occurrence of two prior "hardovers." Jet Alaska answered this argument by offering evidence that all other possible causes had not been eliminated and providing testimony as to other theories entertained by company engineers. Yet, although dissimilarities exist between the prior incidents and the litigated event in that both prior hardovers occurred during landings while the faulty nosegear device was disengaged whereas the accident at issue occurred during take-off with the device in use, Jet Alaska was apprised of a tendency of the nosewheel to veer to one side. If the jury were to find that the prior incidents were in fact caused by the same defect that caused the February 3 accident,[4] Swearingen would have sat-

---

4. Such a conclusion is supported by the fact that the steering system involved in all three incidents contained an inherent design defect, that even when turned "off," the defective steering system remained mechanically con-

nected to the aircraft, and that Jet Alaska's own Director of Maintenance believed all three hardovers to be caused by the defective actuator.

isfied its burden of production on the element of knowledge. In light of the above, Swearingen appears to have created a question of fact on the issue of Jet Alaska's actual knowledge. It was not error to submit the issue of comparative negligence to the jury.

## JURY INSTRUCTION ON COMPARATIVE NEGLIGENCE

■ Jet Alaska also claims that even if there was enough evidence adduced for the comparative negligence issue to go to the jury, the court improperly instructed the jury on that issue.

Instruction No. 26 provided:

Defendants claim that the plaintiff, Jet Alaska, was contributorily negligent in that it voluntarily and unreasonably assumed a known risk of injury because it continued to use the Swearingen Metro II aircraft, TC–218, knowing the aircraft had a defective nose gear steering actuator.

To establish this defense, the defendant has the burden of proving by a preponderance of the evidence all of the following propositions:

1. That Jet Alaska knew of the defect in the nose gear steering actuator.

2. That Jet Alaska knew the nature and magnitude of the risk arising from using the aircraft in its defective condition.

3. That Jet Alaska voluntarily encountered such risk.

4. That it was unreasonable for Jet Alaska to encounter such risk.

In determining whether or not the first proposition is true, that is, whether Jet Alaska knew of the defect, it is sufficient if Jet Alaska knew of the effect the defect had on the operation of the aircraft, regardless of whether they knew the precise source or nature of the cause of such effect.

Jet Alaska argues that the instruction was improper because it diverged from the instruction we approved in *Caterpillar Tractor Co. v. Beck,* 593 P.2d 871 (Alaska 1979), *rev'd on other grounds,* 624 P.2d 790 (Alaska 1981), which required proof of an "actual awareness of the alleged design defect." *Caterpillar Tractor,* 593 P.2d at 887–88 n. 54.

We fail to discern any significant difference between the two instructions. Instruction No. 26 does not, as Jet Alaska asserts, employ an objective standard. It, too, insists upon actual subjective knowledge on the part of the plaintiff. The fact that the knowledge component can be satisfied by awareness of the *effect* of the defect, as opposed to knowledge of the precise technical source or cause of that effect, merely emphasizes that a sophisticated scientific understanding of the mechanism is not a prerequisite. This position finds support in *Patricia R. v. Sullivan,* 631 P.2d 91 (Alaska 1981) wherein we defined "defective" as encompassing any failure of safe performance rather than depending upon an awareness of specific reasons for a product's failure. *Id.* at 103.[5]

## DISMISSAL OF BRINKERHOFF'S CLAIM

Brinkerhoff argues that the superior court erred in dismissing his claim. Upon receiving the jury determination that the fair market value of the plane was $950,000, the trial judge dismissed Brinkerhoff's claim. In this appeal, we are asked to determine whether this finding by the jury provided an adequate basis for dismissing the claim. Although his property damage was not found to exceed the amount he recouped through the salvage sale and insurance proceeds, Brinkerhoff asserts that he is still entitled to an award of prejudgment interest.

■ We hold that despite the jury's finding as to the fair market value of the plane, Brinkerhoff retained a valid cause of

---

**5.** We attach no significance to the fact that this functional definition was announced in the con-   text of determining a defendant's liability.

action for pre-judgment interest for the period extending from the date of the accident to the date of his recovery from his insurer. The right to compensation accrues at the time of the injury. This court has recognized that because of the time value of money an award of interest is necessary in order to fully compensate an injured party. *State v. Phillips,* 470 P.2d 266, 273–74 (Alaska 1970).

> "[P]re-judgment interest is in the nature of compensatory damages, . . ." *Davis v. Chism,* 513 P.2d 475, 480 (Alaska 1973); *see also City and Borough of Juneau v. Commercial Union Insurance Co.,* 598 P.2d 957, 959 (Alaska 1979). In *Davis* we stated:

> The reason for awarding pre-judgment interest is that money is worth less the later it is received. Plaintiff is entitled to the amount to which he has been damaged by the defendant from the date his cause of action accrued. Thus it may be argued that plaintiff was entitled to the use of that amount from the same date, and the use of that money has real economic value, of which the plaintiff has been deprived. In this sense, pre-judgment interest is necessary to compensate the plaintiff, not only for the amount by which he has suffered damages in the usual sense but also for the loss of use of the money to which he has been entitled.

*Davis,* 513 P.2d at 481.

In this case, the fair market value of the plane at the time of the crash—as found by the jury—was $950,000 and the fair market value of the hull after the accident—as determined by the resale price—was $277,500. Therefore, the total property loss at the time of the accident amounted to $672,500—the amount eventually received in insurance proceeds. If, upon entry of judgment in his favor, Brinkerhoff were to receive interest on the $672,500 for the time span from the accident until the insurance settlement on June 8, 1977, during which he was deprived of the use of money rightfully

his, he would only be compensated for an amount not paid by insurance.

We must, however, reject Brinkerhoff's argument to the effect that he is entitled to recover more than this amount. Brinkerhoff argues that Swearingen is entitled to a setoff of only the $375,000 that it paid in settling with the insurance company and that the rest of the $672,500 loss is recoverable by Brinkerhoff because such an outcome, while permitting a double recovery, would not impose a double burden. We disagree. Although he could have sued to recover for the full amount of damage and held the appropriate portion of that recovery (including prejudgment interest on the $672,500 after June 8, 1977) in trust for his insurer whose subrogation rights arose upon payment under the policy, *see Truckweld Equipment Co. v. Swenson Trucking & Excavating, Inc.,* 649 P.2d 234, 238 (Alaska 1982), the insurance company's decision to settle its claim foreclosed this option. We also attach no relevance to Brinkerhoff's allegation that the settlement agreement reached between Swearingen and his insurer was collusive. An insurance company is free to settle its subrogation claims for any amount.[6]

## CROSS–APPEAL

### A. Prejudgment Interest

In its cross-appeal, Swearingen urges that the superior court erred in allowing Jet Alaska prejudgment interest from October 7, 1977. Loss of use damages were awarded without specifying the precise period over which the loss of use extended. Swearingen claims that the prejudgment interest award could result in an overlap of prejudgment interest with loss of use damages and thus, a double recovery.

The overlapping of loss of use damages and prejudgment interest would

---

**6.** Brinkerhoff also contends that the court erred in determining that Swearingen was the prevailing party in his suit and awarding to Swearingen costs and attorneys' fees. The determination of the prevailing party and the calculation of attorneys' fees must, however, be redone in light of the affirmative recovery to be had by Brinkerhoff. Therefore, we need not address this issue.

constitute double recovery. *State v. Stanley,* 506 P.2d 1284, 1295 (Alaska 1973). But, here neither side contended that the loss of use extended beyond October 7, the date on which prejudgment interest commences. Under these circumstances there is no potential for double recovery. The award was not erroneous.

### B. Rule 68 Offer of Judgment

 Swearingen also argues that the court erred in not applying Rule 68 to assess offerees, Jet Alaska and Brinkerhoff, for costs incurred by Swearingen, the offeror, after it made its joint offer because the final judgment they obtained was less favorable than Swearingen's rejected offer of $50,000 plus costs, interest and fees.

In *Randles v. Lowry,* 4 Cal.App.3d 68, 84 Cal.Rptr. 321 (Cal.App.1970), the California appellate court refused to let that state's offer of judgment rule be triggered by a joint offer made to a husband, wife and son. The court noted the difficulties in apportionment between offerees as the reason for its decision. *Id.* 84 Cal.Rptr. at 325. We agree with that court's position. Although problems of apportionment may not always be present, such difficulties are prevalent enough to warrant a general exclusion of joint offers from the penal cost provisions of Rule 68.

AFFIRMED in part, REVERSED in part.

CONNOR, J., not participating.