Charlie N. FALCONER, Appellant
and Cross–Appellee,

v.

Donald F. ADAMS, Appellee,

and

Karla Taylor–Welch, Appellee
and Cross–Appellant.

Nos. S–7637, S–7657.

Supreme Court of Alaska.

March 26, 1999.

---

19. *Id.* at 67, 475 S.E.2d 62 (quoting *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171, 174 (1995)).

20. 476 P.2d 474 (Alaska 1970).

23. Op. at 398.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant/Cross–Appellee.

Clifford W. Holst, Law Office of Clifford W. Holst, Anchorage, for Appellee Donald F. Adams.

Gary Foster, Law Office of Gary Foster, Fairbanks, for Appellee/Cross–Appellant Karla Taylor–Welch.

Before MATTHEWS, Chief Justice, and COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

Karla Taylor–Welch was driving a vehicle that rear-ended a stopped vehicle driven by Charlie Falconer; Falconer sued Taylor–Welch and a third driver, Donald Adams, who had allegedly forced Falconer to stop. A jury, finding Adams not negligent and Taylor–Welch and Falconer both partially negligent, awarded Falconer damages against Taylor–Welch. The trial court granted Falconer a judgment notwithstanding the verdict (JNOV) on the issue of his own negligence, denied him attorney's fees against Adams, and entered a final judgment reducing the net award of damages by the amount of medical payments Falconer had received from his own insurer. These rulings are now challenged. We conclude: (1) because Taylor–Welch failed to prove that Falconer received unsubrogated collateral-source benefits, the jury verdict should not have been reduced; (2) Falconer failed to establish that he was entitled to prevailing-party fees against Adams; and (3) Taylor–Welch's cursory discussion of her challenge to the JNOV amounts to a waiver of the point.

## I. FACTS AND PROCEEDINGS

### A. The Collision, the Trial, and the Verdict

On February 3, 1992, Falconer was driving north on Cushman Street in Fairbanks. He began to turn left onto Seventh Avenue, but stopped abruptly. Taylor–Welch was following Falconer; she applied her brakes but slid on the icy pavement and collided with Falconer's car. Falconer claimed that he was forced to stop because he saw Adams's car on Seventh Avenue facing him in the wrong lane of traffic. Falconer sued Taylor–Welch and Adams for personal injuries sustained in the collision, seeking, among other things, reimbursement of $8038.24 in medical expenses.[1]

At trial, Taylor–Welch confirmed Falconer's version of events. She testified that she saw Falconer signal prior to turning; when Falconer stopped, she hit her brakes but her car slid into Falconer's. When she got out of her car and approached Falconer, she saw that he had been unable to complete his turn because Adams's car was in the wrong lane and was blocking him.

Adams denied being in the wrong lane of traffic. He testified that he was stopped in the middle lane—the designated left-turn lane—on Seventh Avenue when the collision occurred. He did not actually see the collision, but he heard the sound of impact, looked up, and saw the stopped cars.

Officer Haydon Bartholomew of the Fairbanks Police Department investigated the collision. At trial, Bartholomew testified from his original investigation report; he had no independent recollection of the incident. Bartholomew testified that neither Taylor–Welch nor Falconer told him that Adams had been in the wrong lane, but he confirmed that Falconer reported that "there was an obstacle or a vehicle, something in front of him, that caused him to brake—apply his brake." According to Bartholomew, this was essentially what Taylor–Welch and Adams reported, also. Bartholomew's understanding was that Falconer had stopped to avoid something on Seventh Avenue. Bartholomew knew of no witnesses apart from Falconer, Taylor–Welch, and Adams.

The jury returned a verdict finding Taylor–Welch forty percent negligent, Falconer sixty percent comparatively negligent, and Adams not negligent. The jury further determined that Falconer's total damages were limited to $5054 in past medical expenses and $510 in past non-economic loss (pain and suffering).

### B. The JNOV on Comparative Negligence

During the trial, Falconer moved for a directed verdict establishing Taylor–Welch's negligence and his own lack of comparative

---

1. In addition, Falconer sought to recover over $130,000 in past and future wage losses and to recover for pain and suffering (his attorney sug- gested $100,000 would be reasonable). Falconer's wife brought a claim for loss of consortium but the jury did not award her anything.

negligence. Taylor–Welch resisted these motions. Relying on Officer Bartholomew's conclusion that the major factor contributing to the collision was an obstruction in the roadway that precluded Falconer from turning, Taylor–Welch argued that reasonable jurors could find that she had not been negligent. And based on the possibility that the jury might find that "Adams was where he was supposed to be," Taylor–Welch argued that Falconer's abrupt stop might itself support a finding of negligence on Falconer's part. The trial judge, noting a desire "to present as much to the jury as I can," declined to direct the verdict but indicated that he would likely overturn a jury verdict actually finding Falconer comparatively negligent.

Immediately upon the jury's return of its verdict finding him sixty percent negligent, Falconer requested a judgment notwithstanding the verdict, pointing out that the court "already ... had reached a tentative decision." The judge deferred the issue pending a formal motion but indicated "that if the motion[ ] come[s] in I will likely grant that motion." Falconer later filed a formal motion for JNOV against Taylor–Welch on comparative negligence; Taylor–Welch filed opposition, and the court granted the motion, without comment, upon entry of the final judgment.

### C. Reduction of the Jury Award for Medical Loss

Falconer's trial began on January 18, 1996, and culminated in a verdict on January 30. On January 18, as the court addressed legal issues to be resolved before jury selection was completed, Adams informed the court that Falconer's insurer, State Farm, had paid Falconer $5000 in medical bills and that Falconer had admitted receiving the payment in answer to a request for admissions. Adams claimed that the payment was "not a recoverable expense in this litigation." Falconer responded that the payment was "a collateral source" and that State Farm was "subrogated to our recovery." Falconer further asserted that if the defendants "wanted to pay State Farm they should have done [that] a long time ago and under AS 09.16.070, [sic,

apparently referring to AS 09.17.070] ... the court's suppose[d] to take that up after the trial and decide whether or not that's a recoverable damage." Adams disagreed, insisting that Falconer had earlier admitted that he was not trying to recover the expense. The trial court dismissed the argument, however, commenting that "all I know is that's not an issue that we have to resolve before the jury is instructed."

In the midst of trial, on January 23, Adams returned to the medical payment issue, supplying the court with a copy of the request for admission that he had mentioned on January 18 and arguing that it was "conclusive proof of the plaintiff's position in this case." Falconer acknowledged the apparent admission but insisted that in later discovery he had made it clear that he did in fact intend to seek recovery of all medical expenses, including those for which he had received payment from his own carrier, State Farm. This prompted the following comment by Adams:

> Now my understanding is State Farm, as its typical practice is, is inclined and will recover on its own right, its damages with regard to its $5,000 dollars. I've seen nothing the plaintiff has provided which says that State Farm intends to have lien rights so they could attempt to get the money allocated here. So what we have here is the potential of a double recovery. . . .

In response, Falconer insisted that "we've already told the court ... in open court, that they are subrogated to that $5,000 and that we have to pay that back. So, so much for the double recovery, there is no double recovery." Falconer reiterated his position that "this matter is best handled after the trial which is specifically what AS 09.16.070[sic] says the court is supposed to do." The court moved on to another subject and the discussion ended.

That same day or the day after, Adams's and Taylor–Welch's insurers—Allstate and GEICO—evidently tendered payment of $5000 to State Farm as reimbursement for medical expenses that State Farm had paid for Falconer. State Farm apparently accepted Allstate's payment as extinguishing State Farm's "Medical Payments Coverage inter-

est" with regard to the medical expenses it paid for Falconer.

After trial, Falconer, Taylor–Welch, and Adams all submitted proposed forms of judgment. Taylor–Welch's proposed judgment form incorporated a $5000 reduction of the jury award for "the amount of the subrogated medical payment lien paid by the defendants." Adams's judgment form included a provision for an award of prevailing party costs and attorney's fees.

Falconer objected to the defendants' forms of judgment. As to Taylor–Welch's proposed $5000 reduction, Falconer acknowledged that the defendants' insurers had paid medical expenses to State Farm but argued that the defendants had failed to establish a right of offset under AS 09.17.070. Falconer further argued that, in any event, the direct payments from defendants' insurers to State Farm could not reduce the jury's net award; the payments were at most subject to offset against his full medical expense claim of $8200, and before any offset was allowed he was entitled to an award of prejudgment interest on the amount of the verdict and to reimbursement for his attorney's fees.

As to Adams's request for prevailing-party attorney's fees, Falconer argued that Adams's $5000 midtrial payment to State Farm was "a limited admission of liability and damages" that effectively made Falconer "the prevailing party as to that payment." Falconer thus demanded prevailing party attorney's fees against both defendants.

Taylor–Welch and Adams both opposed Falconer's demands. Taylor–Welch argued that Falconer had not prevailed and that he was not entitled to prejudgment interest "on the subrogated medical pay lien amount," since his bills had been paid by State Farm and he had never lost the use of the money awarded by the jury. Adams argued that "[d]uring the course of trial, Allstate and GEICO extinguished the State Farm subrogation interest that State Farm attempted to

recover directly from them." Adams further argued that, for purposes of prevailing party attorney's fees, "[t]he fact [that] Allstate and GEICO extinguished State Farm's interest proves nothing other than the fact [that] the insurance carriers settled claims between themselves."

Without explanation, the court entered judgment on the forms proposed by Taylor–Welch and Adams, reducing the verdict against Taylor–Welch by $5000 and awarding Adams—rather than Falconer—prevailing party fees and costs. Falconer appeals, challenging the $5000 reduction of the jury's award and the court's failure to grant his request for fees and costs against Adams. Taylor–Welch cross-appeals, contesting the court's entry of a JNOV against her on the issue of Falconer's negligence.

## II. DISCUSSION

### A. Falconer's Appeal—Effect of Allstate's Mid–Trial Tender of State Farm's Medical Payments on the Jury's Verdict and on Adams's Prevailing–Party Status

■ On appeal, Falconer renews the arguments he raised below. As to Taylor–Welch he claims that no offset for Allstate's payment to State Farm was justified and, alternatively, that any offset should be governed by AS 09.17.070.[2] As to Adams he claims that he is entitled to "prorata [sic] attorney's fees, costs and interest, associated with the $5,000 payment to State Farm."

In response to Falconer, Taylor–Welch takes the position that Adams's insurer, Allstate, "paid off State Farm medical payments of $5,000 ... pursuant to the Interinsurance Company Agreement on the handling of these types of subrogation claims." Taylor–Welch thus asserts that "[t]he $5,000 was properly deducted from [Falconer's] verdict to prevent double recovery or, more accurately, double payment."[3]

2. In the absence of evidentiary dispute, the existence of an offset presents a question of law. *Cf.* *Luth v. Rogers & Babler Constr. Co.,* 507 P.2d 761, 767–68 (Alaska 1973). This court reviews "questions of law de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy." *Bauman v. Day,* 892 P.2d

817, 824 (Alaska 1995) (citing *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987)).

3. More specifically, Taylor–Welch asserts: (1) that Falconer is not entitled to a set-off against his total medical expense claim of $8038 because

With regard to attorney's fees, Adams takes the position that the trial court properly determined him to be the prevailing party because he was found not negligent and "is therefore liable for none of [Falconer's] damages."

### 1. Reduction of Falconer's verdict

■ In our view, the issue of Taylor–Welch's right to reduction of the jury verdict is governed by AS 09.17.070, which deals with proof of collateral source payments.[4] It is undisputed that State Farm's payments of Falconer's medical expenses were initially subject to a right of subrogation; hence, under subsection (a) of AS 09.17.070, Taylor–Welch would not have been entitled to introduce evidence of those payments to reduce the jury's damage award.

Nevertheless, in arguing that Allstate "paid off State Farm medical payments ... pursuant to the Interinsurance Company Agreement on the handling of these types of subrogation claims," Taylor–Welch implicitly asserts that, by extinguishing State Farm's right of subrogation, Allstate's mid-trial payment to State Farm converted the subrogated medical expenses State Farm incurred on Falconer's behalf into unsubrogated benefits that became subject to offset under AS 09.17.070(a).

This assertion presents a twofold problem. First, assuming the validity of Taylor–Welch's theory, Taylor–Welch would not have been entitled to a reduction of the net jury damage award. Instead, her right to a deduction would have been governed by subsections (b) and (c) of AS 09.17.070, which would have entitled Falconer to be made whole, before any deduction, for all attorney's fees he had incurred and all amounts he paid or contributed to secure his right to the State Farm medical payment benefit.[5]

---

this total claim incorporates a mathematical error; (2) that Falconer is not entitled to credit for attorney's fees expended in connection with Allstate's payment because he admitted in his answer to a request for admission that he was not attempting to recover medical payments paid by his insurer; and (3) that he is not entitled to prejudgment interest on the payment because State Farm paid his medical bills and he did not lose the use of the money, and because "under the Interinsurance Company Agreement mentioned above, interest is not charged or collected on reimbursed subrogated 'medpay' payments."

These arguments lack merit. First, Taylor–Welch's assertion of a mathematical error in Falconer's claim is itself in error. Second, Taylor–Welch's argument that Falconer's answer to Adams's request for admission waived his right to recovery of medical payments is untenable given the ambiguous nature of the request and answer, given Falconer's subsequent filing of discovery materials establishing his intent to recover his medical expenses, and given the trial court's willingness to allow Falconer to seek recovery of these damages at trial. Last, the factual underpinnings of Taylor–Welch's prejudgment interest argument are unsupported by the record: the record is silent as to whether State Farm charges or collects prejudgment interest when recovering on subrogated medical payments claims. See infra note 5.

4. AS 09.17.070 provides in relevant part:

(a) After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received ... by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract.

(b) If the defendant elects to introduce evidence under (a) of this section, the claimant may introduce evidence of

(1) the amount that the actual attorney fees incurred by the claimant in obtaining the award exceed the amount of attorney fees awarded to the claimant by the court; and

(2) the amount that the claimant has paid or contributed to secure the right to an insurance benefit introduced by the defendant as evidence.

(c) If the total amount of collateral benefits introduced as evidence under (a) of this section exceeds the total amount that the claimant introduced as evidence under (b) of this section, the court shall deduct from the total award the amount by which the value of the nonsubrogated sum awarded under (a) of this section exceeds the amount of payments under (b) of this section.

(d) Notwithstanding (a) of this section, the defendant may not introduce evidence of

(1) benefits that under federal law cannot be reduced or offset;

(2) a deceased's life insurance policy; or

(3) gratuitous benefits provided to the claimant.

(e) This section does not apply to a medical malpractice action filed under AS 09.55.

5. Moreover, since prejudgment interest is a form of consequential damages, see Farnsworth v. Steiner, 638 P.2d 181, 184 (Alaska 1981), an award of prejudgment interest becomes a part of the judgment proper. Cf. Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin, 828 P.2d

Second, under subsection (a) of AS 09.17.070, Taylor–Welch bore the burden of proving her right to an offset by "introduc[ing] evidence of amounts received" by Falconer from a collateral source that "[did] not have a right of subrogation by law or contract." Thus, she was entitled to no reduction of the verdict unless she proved that Allstate's payment actually extinguished State Farm's right of subrogation against Falconer.[6] And in light of AS 09.17.070(d), Taylor–Welch was further required to prove that Allstate's payment did not result in "a gratuitous benefit[ ] . . . to [Falconer]."

Taylor–Welch did not carry this burden. Although it is undisputed that, during the trial, Allstate paid State Farm $5000 for medical expenses that State Farm had earlier paid on behalf of Falconer, the trial transcript and post-trial pleadings contain only passing references to this payment. On appeal, Taylor–Welch makes only conclusory assertions of an interagency agreement "on the handling of these types of subrogation claims"; she supplies no citations to evidence in the record supporting these assertions, and we have found no evidence of an interagency agreement of the kind Taylor–Welch asserts. As far as we can ascertain, no evidence was presented below that would have enabled the court to determine the basis for or the specific terms of any interagency agreement, or the legal effect of the Allstate payment to State Farm.

The only concrete sign of payment in the record consists of unfiled copies of several documents indicating that Allstate, purportedly acting on behalf of both Taylor–Welch and Adams, tendered last-minute payment of $5000 to State Farm to extinguish "State Farm's Medical Payments Coverage interest in the amount of $5,000 with regard to medical expenses paid on behalf of Charlie Falconer. . . ."[7]

These documents raise more questions than they answer. Allstate was Adams's insurer, not Taylor–Welch's. Taylor–Welch fails to explain what basis she has for claiming credit for a payment by Adams to Falconer, and the record does not establish a factual foundation for such a credit. Even assuming that Taylor–Welch might be entitled to credit for Allstate's payment, she fails to establish what portion of Allstate's $5000 payment is allocable to her, and what portion to Adams, Allstate's insured. Moreover, she fails to show exactly what medical expenses the payment was meant to reimburse: the jury awarded Falconer less than his total claim for medical expenses; whether All-

745, 759 (Alaska 1992); *Guin v. Ha,* 591 P.2d 1281, 1287 (Alaska 1979); *Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973). It follows that any reduction of Falconer's judgment under AS 09.17.070 would have been appropriate only after adding prejudgment interest to the jury award.

**6.** *See* AS 09.17.070(a). *Cf. Phillips v. Liberty Mut. Ins. Co.,* 813 F.2d 1173, 1176 (11th Cir. 1987) ("The law has placed the burden on the defendant to show a definite amount of offset.").

**7.** The record contains copies of three relevant documents: an Allstate check to State Farm, a "Facsimile Cover Sheet" from State Farm to Allstate, and a letter from State Farm to GEICO. The Allstate check to State Farm is numbered 68757113, appears to be dated January 23 (presumably 1996), and bears the notation "payment of subrogation for claim 02–0186–640 in behalf of Karla Welsh and Don Adams." State Farm's "Facsimile Cover Sheet" indicates on its face that it was transmitted to Allstate at approximately 4:00 p.m. January 24, 1996. The cover sheet lists "Falconer/Welsh" as the "Insured" and refers to claim number

020186640/3321040275. A handwritten remark on the sheet states: "Upon receipt of Allstate check # 68757113 in the amount of $5,000, State Farm's Medical Payments Coverage interest in the amount of $5,000 with regard to medical expenses paid on behalf of Charlie Falconer will be extinguished against Allstate's insured, Taylor Welsh, and GEICO's insd, Don Adams." The State Farm letter to GEICO is dated July 24, 1992, refers to State Farm claim number 02–0186–640, and lists "Carla T. Welch" as GEICO's insured; it expresses State Farm's belief that Taylor–Welch "is responsible for our insured's medical expenses as a result of this [the February 3, 1992] accident," states that it is State Farm's practice "to resolve subrogation issues as amicably and expeditiously as possible," and requests GEICO's "agreement at this time to honor our interest by issuing a separate check to us directly at the time of settlement." The presence of these documents in the record is unexplained: the record discloses no information as to the circumstances under which they were submitted to the superior court and provides no insight into whether the court considered them before it entered judgment. None of the parties refer to the documents in their briefs.

state's check reimbursed State Farm for the same medical expenses awarded by the jury remains entirely unclear. And Taylor–Welch has not explained why she should receive a full $5000 credit against the jury's medical expenses award, as opposed to either a pro rata reduction, or a reduction from the gross amount of Falconer's medical expenses claim.

In sum, the record contains documents reflecting a payment by Adams's insurer to Falconer's, they are unauthenticated, their presence in the record is unexplained, and Taylor–Welch fails even to mention them in her briefing. Given these circumstances, we decline to hold that these documents establish Falconer's receipt of collateral-source payments that Taylor–Welch is entitled to deduct from the jury's award against her. On the record presently before us, we conclude that the trial court lacked a sufficient evidentiary basis to deduct any collateral source payments from the jury's award of damages.[8]

### 2. Denial of prevailing-party attorney's fees against Adams

■ For much the same reason, we must conclude that Allstate's mid-trial payment to State Farm does not entitle Falconer to an award of attorney's fees against Adams. Alaska Civil Rule 82 allows attorney's fees to be awarded only to "the prevailing party in a civil case." The jury verdict found Adams non-negligent and awarded Falconer no damages against him. Falconer's assertion of prevailing-party status thus depends entirely upon his characterization of Allstate's pay-

ment to State Farm as a partial "constructive settlement" of Falconer's claim against Adams. Yet Falconer, like Taylor–Welch, has failed to establish the surrounding circumstances, contractual terms, and legal significance of Allstate's payment to State Farm. We therefore conclude that, on this record, Falconer's claim to attorney's fees against Adams must fail.

In sum, the superior court erred in reducing Falconer's verdict to account for payment of his medical expenses but did not abuse its discretion in awarding costs and fees to Adams, instead of Falconer.

### B. Taylor–Welch's Cross–Appeal—The Trial Court's Award of a JNOV as to Falconer's Comparative Negligence.

■ After the jury found that Falconer was sixty percent comparatively negligent, Falconer moved for a judgment notwithstanding the verdict on this point, arguing that there was no evidence to support a finding that he acted negligently. The trial court granted Falconer's motion. Taylor–Welch appeals the trial court's decision, arguing that Falconer's negligence was an issue of fact that should properly have been left to the jury.[9]

Falconer responds that, because none of the witnesses at trial gave testimony indicating that he had driven negligently, and because Taylor–Welch herself candidly admitted that Falconer had done nothing wrong, there was no reasonable basis for a finding of comparative negligence.[10] Falconer alterna-

---

8. We recognize that a tort claimant should not be reimbursed twice for the same injury. *See Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761, 766 (Alaska 1973). In providing that an unsuccessful defendant *"may"* introduce evidence of amounts received by the plaintiff from collateral sources, however, AS 09.17.070(a) permits, but does not require, defendants to assert collateral source claims as offsets to plaintiff's verdicts. Accordingly, when, as here, a defendant fails to prove unsubrogated collateral source payments, the appropriate recourse for the trial court is to deny reduction of the verdict; on appeal of an unsupported reduction, the correct remedy is reversal, not a remand for a second opportunity to prove up the claim. We note that Falconer has consistently acknowledged that the medical payments he received from State Farm were subject to a right of subrogation. We find no reason to pre-

sume that the parties and their insurers will be unable to protect against the possibility of double recovery through negotiations or separate proceedings.

9. "It is well established that the proper role of this court, on review of motions for directed verdict or for judgment notwithstanding the verdict, is not to weigh conflicting evidence or judge the credibility of witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the nonmoving party, is such that reasonable men could not differ in their judgment." *Hahn v. Russ*, 611 P.2d 66, 67 (Alaska 1980) (citations omitted).

10. Although Falconer argues that Taylor–Welch's negligence was firmly established as a matter of law under *Green v. Plutt*, 790 P.2d 1347, 1349

tively contends that Taylor–Welch's argument on this point "is scantily contained in her brief" and should be deemed abandoned for lack of adequate briefing.

We conclude that Falconer's waiver argument is well taken. Taylor–Welch's discussion of the issue of Falconer's negligence consists of a single, cursory paragraph. After setting out the applicable standard for granting a judgment notwithstanding the verdict, Taylor–Welch simply asserts that the jury, having decided that Adams was not in the wrong lane of traffic, was free to conclude that Falconer's abrupt stop was not adequately explained and therefore amounted to negligence.[11]

■ Taylor–Welch's argument oversimplifies the issue, for it presupposes that a rejection of Falconer's claim of negligence against Adams automatically justifies an assumption of negligence by Falconer. At heart, this argument is a claim of res ipsa loquitur:[12] Taylor–Welch simply assumes that an unexplained stop presumptively establishes negligence. Taylor–Welch cites no authority and provides no meaningful discussion to support this assertion.

Our own review of the record reveals no affirmative evidence indicating that Falconer's stop was negligent. Taylor–Welch and Falconer both testified that Falconer stopped because his turn was obstructed by an on-coming vehicle in the wrong lane of traffic; both identified the vehicle as Adams's. Another witness, Mark Norum, confirmed the presence of an oncoming vehicle but did not identify it as Adams's. Adams denied being in the wrong lane of traffic but did not see the accident and apparently did not claim that the far left-hand lane on Seventh Avenue was unobstructed.[13] Officer Bartholomew, who arrived at the scene some time after the collision, testified that neither Falconer nor Taylor–Welch reported Adams's responsibility. Nevertheless, Bartholomew confirmed that Falconer said he had stopped for "an obstacle or a vehicle, something in front of him." And Bartholomew further testified that this was essentially what Taylor–Welch and Adams told him, too.

Given this evidence, the jury could certainly have accepted Adams's claim that he was not blocking Falconer and rejected Falconer's and Taylor–Welch's testimony to the contrary. However, we find it far from obvious that acceptance of Adams's version of events could have supported a finding that Falconer's actions were negligent—that is, that his abrupt stop was unnecessary and that he did not reasonably believe it to be necessary.

■ Considering Taylor–Welch's cursory discussion of the evidence, her conclusory assertion that an unexplained, abrupt stop is

(Alaska 1990), *Grimes v. Haslett,* 641 P.2d 813, 819 (Alaska 1982), *Hahn,* 611 P.2d at 67, and *Clabaugh v. Bottcher,* 545 P.2d 172, 176 (Alaska 1976), he does not argue that these cases categorically preclude a finding of negligence by both drivers who are involved in a rear-end collision; rather, he argues only that there is insufficient evidence in this case to support a finding that he did in fact act negligently.

11. The entire argument consists of the following conclusory discussion:

Clearly, the testimony at trial was conflicting on why Falconer stopped so abruptly in the course of his left turn, in the middle of the intersection. The jury could differ in their assessment of this evidence. After weighing the evidence and viewing the credibility of the participants, the jury decided that Adams was not in the wrong lane, and consequently, not at fault. The jury then determined that Falconer's sudden stop, in the absence of Adams' truck, was negligence on his part and assessed his negligence at 60%. It was up to the jury to decide who it believed and disbelieved and what testimony to discount. Without Adams to blame, Falconer's very abrupt stop was subject to the jury's scrutiny and, as indic[a]ted above, the jury found Falconer had the lion's share of responsibility for the accident (60%). The trial court erred when it overruled that determination. [Citation omitted.]

12. The doctrine of res ipsa loquitur "is a bridge, dispensing with the requirement that a plaintiff specifically prove breach of duty, once that duty and proximate cause have been established," and applies only when an accident ordinarily does not occur in the absence of negligence. *State Farm Fire & Cas. Co. v. Municipality of Anchorage,* 788 P.2d 726, 730 (Alaska 1990) (quoting *Widmyer v. Southeast Skyways, Inc.,* 584 P.2d 1, 10 (Alaska 1978)).

13. Taylor–Welch did not submit a full trial transcript. Our review of the record is thus necessarily confined to the limited portion of Adams's testimony included in the transcript.

in itself sufficient to establish negligence, and her failure to cite any authority to support this assertion, we conclude that Taylor–Welch must be deemed to have waived her claim of error as to the order granting Falconer a judgment notwithstanding the verdict on comparative negligence.[14]

## III.  *CONCLUSION*

For the foregoing reasons, we AFFIRM the judgment entered by the superior court as to Adams.  We also AFFIRM the court's order granting Falconer a judgment notwithstanding the verdict on the issue of his comparative negligence.  However, because we conclude that the court erred in reducing the jury's award of damages to Falconer, we VACATE the judgment entered against Taylor–Welch, and REMAND for entry of an amended judgment conforming with the views expressed in this opinion.

MATTHEWS, Chief Justice, with whom EASTAUGH, Justice, joins, dissenting in part.

Under today's opinion GEICO, having with Allstate paid $5,000 to State Farm on State Farm's subrogated claim, will have to pay the same amount for the same loss to Falconer.  Double payment here is thus not merely a fear, it is a reality.

Today's opinion acknowledges this but suggests that the parties can undo the double payment "through negotiations or separate proceedings."  Op. at 413, n. 8. If State Farm agrees to pay the $5,000 back to Allstate and GEICO, State Farm will have an unsatisfied subrogation claim which then could only be satisfied by obtaining money from Falconer.  If he agrees to pay $5,000 to State Farm, no one will have paid, or recovered, twice for the same loss.  But that is the very result from which Falconer has brought this appeal and which today's opinion has changed.  Given Falconer's appeal in this case, it seems doubtful that he will agree to relinquish his hard-won $5,000.  And it is by no means clear that Allstate and GEICO will be able to

undo their settlement with State Farm to start the process.  Thus, as a result of today's opinion, either one insurance company must pay twice for the same loss or expensive and time-consuming negotiations and proceedings of uncertain efficacy must take place.

This undesirable result is not required by any statute or principle of common law.  Alaska Statute 09.17.070 does not apply, because that statute only applies to amounts received by a claimant "from collateral sources that do not have a right of subrogation. . . ."  State Farm obtained the right of subrogation when it paid $5,000 of Falconer's medical expenses.  Since the statute does not apply, the common law does.

Under the common law, when State Farm paid the $5,000 it became subrogated to Falconer's claim.  State Farm had a variety of options which it might have exercised in order to collect this claim.  It might have permitted Falconer to include its claim in his action against Adams and Taylor–Welch, in which case Falconer would have been required to reimburse State Farm, less pro-rata costs and attorney's fees for prosecuting the claim.  State Farm might have intervened in Falconer's action and pressed the claim on its own.  Or State Farm might have asserted the claim against the defendants' insurers and negotiated it privately.  *See Rice v. Denley,* 944 P.2d 497, 500 n. 5 (Alaska 1997).

State Farm evidently chose a combination of the first and third options.  It seems to have permitted, at least tacitly, Falconer to prosecute its claim until, during trial, it settled the claim by accepting payment from Allstate/GEICO.  As the claim was State Farm's to settle, it had a right to do this.  But given the timing of the settlement, State Farm might be responsible for its share of pro-rata costs and attorney's fees incurred by Falconer in the successful prosecution of the claim.[1]  *See Edwards v. Alaska Pulp Corp.,* 920 P.2d 751, 754, 755–56 (Alaska

---

**14.**  *See Kristich v. State,* 550 P.2d 796, 804 (Alaska 1976).

**1.**  State Farm is not a party to this litigation.  Until and unless it is joined as a party no decision as to whether it should pay a share of Falconer's costs and fees can be made.

1996); *Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525 (Alaska 1976).

At common law a plaintiff may not recover for a subrogated claim that the subrogee has settled. *Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 942 (Alaska 1983). Thus, leaving aside for the moment Falconer's claim that the jury award of $5,054 in medical expenses did not include all the expenses paid by State Farm, the trial court acted correctly by deducting $5,000 from the verdict. However, the court should have determined whether the settlement was the product of this litigation. If so, the court should then have decided the question of who, as between Falconer and Taylor–Welch, is the prevailing party for purposes of court-awarded fees and costs.[2]

Alaska Statute 09.17.070 does not apply as to amounts received by a claimant from collateral sources which have a right of subrogation. It is uncontested that State Farm had a right of subrogation. It should follow that AS 09.17.070 does not apply and the common law does. Today's opinion asserts that Taylor–Welch has implicitly argued that when Allstate/GEICO paid State Farm, State Farm's subrogated payment became unsubrogated and thus subject to AS 09.17.070. Op. at 411–412. I have read Taylor–Welch's brief with great care and cannot find that implicit argument. Indeed, I could find no mention of AS 09.17.070 at all. But if such an argument had been made, it would lack merit. Accepting such a position would mean that a plaintiff would regain the right to claim a subrogated amount when the subrogee settles its claim with a defendant. Such a result would eliminate the ability of subrogees to settle their claims independently. This could not have been contemplated by the legislature in enacting the tort reform package of which AS 09.17.070 is a part.

A complicating factor in this case is that Falconer claimed medical expenses resulting from the accident of a little over $8,000, but the jury awarded medical expenses of only slightly more than $5,000. Falconer argued before the trial court, and argues on appeal, that in the absence of evidence that the $5,000 paid by State Farm was the same $5,000 awarded by the jury the reduction should be made from the whole claim. He notes that after the jury announced its verdict, but before it was discharged, he requested that the court direct the jury to specify which expenses it had not awarded. The defendants objected and the information was not obtained.

Citing *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1171 (5th Cir.1982) and cases cited therein, Falconer contends that the burden is on the party claiming duplication of damages to show that the damages assessed against it have "been previously covered." Taylor–Welch has cited nothing to the contrary. I would accept this rule.

The trial court made no findings as to why it concluded that the expenses paid by State Farm coincided with the expenses which the jury found to have been caused by the accident. It is possible that there is a defensible, but unexpressed, basis for this conclusion. I would therefore remand this aspect of the case to the trial court for a determination of whether the expenses awarded by the jury were the expenses paid by State Farm. The burden of proof on this question should be on Taylor–Welch, and, if the burden is not satisfied, the court should conclude that the overlap is the minimum possible given the amounts of the claimed and awarded expenses.[3] In that event the court should modify its reduction of the medical expenses award accordingly.

---

**2.** The rationale would be akin to the "catalyst" theory discussed and assumed valid for the purposes of our decision in *State, Dep't of Natural Resources v. Tongass Conservation Soc'y*, 931 P.2d 1016, 1017 (Alaska 1997). Arguably the same rationale might apply to Adams, but in his case the fact that he prevailed at trial should control, in my opinion.

**3.** The problem posed here could have been prevented in two ways. The court might have granted Falconer's request and asked the jury to specify which medical bills were not incurred as a result of the accident. (It was known that State Farm had paid the first $5,000 claimed.) Or the court might have granted the defendants' request to instruct the jury in advance of deliberations that it should not award any part of the first $5,000 in medical expenses because these had been paid by a third party.

Falconer also contends that the trial court should have awarded him pre-judgment interest on the expenses paid by State Farm. This argument lacks merit. State Farm was the owner of the subrogated claim. It could settle the claim for any amount it and the defendants might agree to. If that settlement was for less than full value, (and did not for example include pre-judgment interest) the difference could not be claimed by Falconer. *See Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 942 (Alaska 1983). The rule Falconer advocates would make it impossible for a subrogee to compromise a claim for discounted value.

Based on the foregoing, I would remand this case to the superior court with instructions to determine whether the medical expenses awarded by the jury were the expenses paid by State Farm and make the appropriate reduction, supported by written findings. The burden of proof on this question should be on Taylor–Welch. The court should then consider whether the $5,000 settlement was the product of the litigation. If it was, the court should consider this as a factor in determining whether Falconer or Taylor–Welch is the prevailing party for the purpose of awarding costs and attorney's fees. Finally, the court should determine whether Falconer or Taylor–Welch is the prevailing party based on this and other relevant factors and award costs and attorney's fees accordingly.[4]

4. I agree that Adams's judgment should be affirmed and that the only point on Taylor–Welch's cross-appeal has been inadequately briefed.